Z. T. HOLMES v. WILLIAM JOHN McNEIL and D. EDWARD PALMER, Appellants.—No. 40097.—203 S. W. (2d) 665.

Division One, July 14, 1947.

*Henry M. Shughart* for William John McNeil and *Harry P. Thomson, Jr.,* for Daniel Edgar Palmer, appellants.

764

*Claude L. Schenck* for respondent.

DALTON, C.—Action for $15,000 damages for loss of services of plaintiff's wife alleged to have been occasioned by defendant's negligence. At the close of plaintiff's case the court directed a verdict for defendants. A motion for a new trial was subsequently sustained on the ground of newly discovered evidence. Defendants have appealed.

Plaintiff's wife received personal injuries when the automobile in which she was riding with both defendants and another person collided, head on, with an electric light pole, near the intersection of Admiral Boulevard and Cherry Street in Kansas City. The automobile was owned by one defendant and was operated by the other. Plaintiff charged that the defendants negligently operated the automobile as follows: (1) "without keeping the same under control," (2) "without keeping a careful lookout ahead," (3) "at an excessive rate of speed," and (4) in violation of an ordinance of Kansas City requiring the exercise of the highest degree of care in the operation of a vehicle and operation at a reasonable rate of speed under the conditions then existing. Plaintiff claimed damages for loss of the society and services of his wife on account of her injuries and for having to pay for nursing and medical attention.

Defendant Palmer, by answer, admitted the operation of the automobile at the time and place alleged and denied other allegations. Defendant McNeil admitted ownership of the automobile, denied that defendant Palmer was his agent or acting in the course of any employment in the operation of the automobile and denied other allegations. The cause was tried to a jury and a verdict directed, as stated.

Appellants assign error on the action of the trial court in granting a new trial to plaintiff (1) because "plaintiff's own evidence showed

that the defendants were not guilty of negligence in any respect,'' and (2) because plaintiff's motion for a new trial was insufficient in form and substance to authorize a new trial on the ground of newly discovered evidence.

The sufficiency of the evidence to show that plaintiff's wife was injured and that plaintiff suffered the loss of her society and services, and was damaged thereby, is not questioned. In view of the issues presented, we will review only the evidence favorable to plaintiff on the issue of negligence.

Plaintiff's wife was his only witness on the issue mentioned. On direct examination she testified that she saw defendant Palmer and his wife at Wendell's Tavern in Kansas City on July 10, 1944, about 5:45 P. M. and invited them to her apartment at 3521 Baltimore. They came there and, later the same evening, defendant McNeil called plaintiff's wife and invited her out to dinner. She explained to him about the Palmers having recently been married and having come to her apartment for the evening and Mr. McNeil invited all of them to go out to dinner with him. They met Mr. McNeil at Wendell's Tavern about 9 P. M. They visited other taverns and, later, they went in Mr. McNeil's automobile to Sixth and Cherry, to Il Pagliaccio's, for dinner, but the place was closed and they decided, at witness' suggestion, to go to the Savoy. Mr. McNeil had been driving, but at that time about 11 P. M., Mr. Palmer was driving. Mrs. Holmes was in the front seat with him and Mr. McNeil and Mrs. Palmer were in the back seat. Mr. Palmer drove east, turned right and went south on Cherry to Admiral Boulevard. On the way, Mr. Palmer said he didn't know where the Savoy was located and Mr. McNeil told him to turn right on Admiral Boulevard at the next corner. Mr. Palmer made the stop at the stop sign, ''approximately 10 feet or so north of the curbing there,'' with the front of the car even with the stop sign. He had come up a steep grade from Sixth Street and the automobile was still ''on the hill'' when stopped. ''Mr. Palmer shifted gears, started the car forward into the intersection to make a right turn.'' The street lights were on and the intersection at Admiral Boulevard was well lighted. There was no traffic. The automobile headlights were on and also a dash light in the automobile. The road ahead was smooth and there were no obstructions. The weather was hot and clear, the streets were dry. The automobile, a 1942 Buick, ''was in good working condition.''

The witness testified further substantially as follows: The automobile started around the turn to the right at the intersection at 4 or 5 miles per hour, when ''all of a sudden the car swerved to the left in a southwesterly direction, the motor racing, and we were headed for a pole. . . . █ Well, we eventually crashed the pole, but the first thing I did, when the car was getting past the center of the street there and I noticed it was getting out of control, I looked

at Mr. Palmer, and I noticed that he was bent over the wheel there groping down at the floor with his left hand. I shouted at him, I shouted, 'Eddy', I tried to reach the emergency brake, but I couldn't reach it because it was on the left hand side of Mr. Palmer and I couldn't get to it. So then I braced myself for the crash.'' The witness later said: ''Mr. Palmer put the car in gear and the car lurched forward to the top of the hill there as he went into the intersection to make that turn.''

Immediately prior to the crash, witness could see Mr. Palmer clearly. His right hand was on the steering wheel and ''his left hand was down toward the floor boards of the car, he was groping with that hand.'' She could see the right side of his face, and his right eye was open. She observed his right eye being open, when the automobile was ''just past the center of the street, after the car started to swerve.'' The car moved approximately 100 to 120 feet from the stop at the intersection to the point of impact at the light pole. The speed of the automobile immediately prior to the impact was estimated at between 20 and 25 miles per hour. No tires blew out immediately prior to the crash or before the automobile struck the pole. Mr. Palmer had not complained about the operation of the automobile, but had said it was ''a honey.''

On cross-examination the witness said that Mr. Palmer took over the driving at 27th and Gillham Road. He was not under the influence of liquor and drove ''perfectly all right,'' and no complaints were made. She first noticed anything unusual ''after he had gone into the intersection there to make this turn when the car started swerving across the street, . . .'' When he first started up, after the stop ''he seemed to have the motor racing quite a little, but that was all.'' He was out into the intersection before she ''looked over and saw him bent over the wheel.'' She admitted her prior testimony, and said she didn't want to change it, wherein she had said, ''He had just made the turn, was turning the car to the right and I noticed the car start to go toward the middle of the street, and I looked at Mr. Palmer and he was kind of slumped over the wheel, looking down.'' She said she considered anyone not sitting up to be ''slumped.'' Prior to the time she saw Mr. Palmer slumped over the wheel, his wife had told her about him having had ''an injury of some sort but nothing had been mentioned about it that night at all.'' She later learned of his foot injury. The witness admitted that she had previously testified that sometime after the collision, Palmer told her ''that he had hurt his foot,'' but she said she did not know it was while he was driving the car until she read it in his deposition.

On re-direct examination the witness admitted that she had previously testified by deposition as follows: ''Q. Do you know of your own knowledge what happened there when he started up at that intersection? A. No, I didn't know what was happening. I noticed the car

was getting toward the middle of the street instead of staying on the right hand side like he had turned and I looked at him and he was bent over the wheel, and I couldn't get to the emergency brake, because it was on the left side of him, and I looked up and saw that pole and the crash took place.'' After the collision, witness suggested to Mr. and Mrs. Palmer that they ''get away from the car'' and they left, ''one at a time.'' Both plaintiff and Mrs. Holmes testified concerning their marriage in 1934 and that they were living at 3521 Baltimore in Kansas City at the time Mrs. Holmes was injured. The ordinance pleaded was offered in evidence.

At the close of plaintiff's evidence, the defendants filed separate motions for a directed verdict. Each motion contained an assignment that ''no negligence on the part of this defendant, as alleged in plaintiff's petition, has been proven.'' The motions were sustained. Thereafter, plaintiff moved for a new trial and assigned error on the court's action in sustaining the motions for a directed verdict and in failing to view plaintiff's case in the light most favorable to him when the ''evidence proved that the defendant Palmer failed to use the highest degree of care in the operation of the automobile.'' Plaintiff further prayed a new ▇▇▇ trial on the ground of newly discovered evidence, to wit, a letter, bearing the genuine signature of defendant Palmer and containing specific admissions against interest. The letter, written after the trial, was received by plaintiff through the United States Mail.

We think the essential and decisive issue presented by the appeal is whether plaintiff's evidence made a case for the jury on any issue of negligence presented. If a case was made for the jury, a new trial was properly granted to plaintiff, regardless of the ground therefor assigned by the trial court, and the order for a new trial should be affirmed. Schroeder v. Rawlings, 344 Mo. 630, 638, 127 S. W. (2d) 678, 683.

As stated, appellants contend that ''the plaintiff proved none of the grounds of negligence alleged in his petition.'' The contention is based upon the theory that the only evidence offered by plaintiff on the issue of negligence was the testimony of Mrs. Holmes; and that her testimony showed the collision in which she ''sustained her injuries was caused by the involuntary reflex action of the defendant Palmer which resulted from the striking of his sore left foot upon some part of the Buick automobile involved.'' Appellants say that, when plaintiff's evidence showed the collision ''was caused by a sudden involuntary loss of control experienced by the defendant Palmer, he stated himself out of court.'' Appellants refer to Mrs. Holmes' testimony as showing that the ''automobile started into a normal turn when suddenly it left its normal path''; and that ''she looked at Palmer and saw him bent or slumped over the steering wheel with his right hand on the wheel and his left hand groping down at the floor.'' Appellants

768

conclude that "the whole overall picture presented then by Mrs. Holmes' testimony is that of a driver making a normal turn, who involuntarily lost control of his reflexes." Appellants say that her testimony "explained how the accident happened and affirmatively showed that there was no actionable negligence," since it showed a loss of control "due to unexpected involuntary reflex action caused by pain."

In support of their position that, where plaintiff's own evidence discloses the collision and injury was "caused by an unexpected attack or loss of control of the driver's reflex action" there is no negligence, appellants cite Blashfield's Cyclopedia of Automobile Law and Practice, Vol. 1, Sec. 656, p. 468; Cohen v. Petty, 65 F. (2d) 820; Armstrong v. Cook, 250 Mich. 180, 229 N. W. 433; LaVigne v. LaVigne, 158 Pac. (2d) 557; Bushnell v. Bushnell, 103 Conn. 582, 131 Atl. 432; Thayer v. Thayer, 286 Mich. 273, 282 N. W. 145. The authorities are not applicable under the facts shown by this record, where the cause of the collision, injury and damage was for the jury.

In determining whether plaintiff made a case for the jury, we must consider all of the evidence in a light most favorable to plaintiff's contentions. Smithers v. Barker, 341 Mo. 1017, 111 S. W. (2d) 47, 50; Skidmore v. Haggard, 341 Mo. 837, 110 S. W. (2d) 726. We must take plaintiff's evidence as true, where it is not entirely unreasonable or opposed to physical laws, and give plaintiff the benefit of all favorable inferences arising from all the evidence and reject unfavorable inferences. The cause may not be withdrawn from the jury unless the facts in evidence and the legitimate reasonable inferences which may be drawn therefrom are so strongly against plaintiff as to leave no room for reasonable minds to differ. Barrett v. St. Louis Southwestern R. Co., (Mo. Sup.), 143 S. W. (2d) 60, 62; O'Shea v. Pattison-McGrath Dental Supplies, 352 Mo. 855, 180 S. W. (2d) 19, 21. Appellants say there is no evidence in the record to support the assignment of "excessive speed." We need not determine that issue. If a case was made for the jury on any theory of negligence set forth in plaintiff's petition, the verdict should not have been directed for defendants. Trower v. Missouri, K. & T. R. Co., 347 Mo. 900, 149 S. W. (2d) 792, 796; Guthrie v. City of St. Charles, 347 Mo. 1175, 152 S. W. (2d) 91, 94.

Apparently it is appellants' position that certain facts testified to by plaintiff's wife conclusively rebut any inferences of negligence on the part of defendants which might otherwise be drawn from the evidence. Appellants emphasize the use of the words, "slumped over the wheel, looking down," which appeared in the witness' prior deposition, and the fact that Palmer's left hand "had become detached from the steering wheel." These words were further used in questions to witness on cross-examination to which she answered "yes" at the trial. We have heretofore set out other testimony of the witness more

favorable to plaintiff's theory of the case. Mr. Palmer "was bent over the wheel . . . groping down at the floor with his left hand." She could see the right side of his face. His right eye was open. She told Mr. and Mrs. Palmer to "get away from the car" after the crash and he left after his wife left. These and other facts heretofore set out do not require the conclusions drawn from the evidence by appellants. There was no direct evidence that defendant Palmer suffered any pain or that he lost control of the automobile "due to involuntary reflex action caused by pain." No one testified that defendant Palmer struck "his sore left foot" upon some part of the automobile, or that he lost control of his reflexes. The inferences to be drawn from the facts shown in evidence were for the jury, but we may consider only the favorable facts and favorable inferences in deciding the issue presented.

Considering the evidence in a light most favorable to plaintiff and upon the theory of negligence set out in the petition, a jury could infer and find that defendant Palmer was not intoxicated; that he was not in pain; that he had suffered no involuntary loss of control of his reflexes; that he was not unconscious or otherwise helpless, but that he was negligent, careless and inattentive to the business of operating the automobile. A jury could infer and find that he was consciously reaching for something on the floor with his left hand and giving his interest and attention to some matter other than operating the automobile; that he had negligently and carelessly released control of the automobile; that he was not keeping a lookout ahead; and that he was not exercising the highest degree of care in the operation of the automobile, when he permitted the automobile to leave the highway and collide with a light pole. We hold that the evidence was sufficient for a jury to infer and find that the direct and proximate cause of the automobile leaving the road and colliding with the light pole was the negligence and inattention of its operator. Kaley v. Huntley, 333 Mo. 771, 63 S. W. (2d) 21, 23; Kaley v. Huntley, (Mo. App.), 88 S. W. (2d) 200, 204. Rogles v. United Rys. Co., (Mo. Sup.), 232 S. W. 93, 96. "Where uncertainty as to the existence of negligence arises from a conflict in the testimony or because, the facts being undisputed, fair minded men will honestly draw different conclusions from them, the question is not one of law, but of fact to be settled by the jury." Barrett v. St. Louis Southwestern R. Co., supra.

In the case of Holmes v. McNeil, decided by Division Two of this court, on May 12, 1947, 356 Mo. 846, 204 S. W. (2d) 303, in a suit by plaintiff's wife for personal injuries sustained in the same collision mentioned, supra, it was held that the trial court erred in directing a verdict therein for defendants at the close of all the evidence and the judgment was reversed and the cause remanded. It appears from the opinion in that case that the evidence there on the issue of negligence was substantially the same as shown by this record.

We need not determine other issues presented. The court did not err in granting plaintiff a new trial.

The judgment is affirmed. *Bradley* and *Van Osdol, CC.,* concur.

PER CURIAM:—The foregoing opinion by DALTON, C., is adopted as the opinion of the court. All the judges concur.