233 S.W.2d 782 (1950)
BEAN
v.
ST. LOUIS PUBLIC SERVICE CO.
No. 27769.
St. Louis Court of Appeals, Missouri.
November 2, 1950.
Rehearing Denied December 1, 1950.
*783 Mortimer A. Rosecan, Harry C. Lewis, St. Louis, for appellant.
Mattingly, Boas & Richards and Lloyd E. Boas, all of St. Louis, for respondent.
WOLFE, Commissioner.
This is an action for damages arising out of personal injuries that plaintiff suffered when he was struck by a streetcar. The trial resulted in a verdict for the plaintiff in the sum of $6500 and the defendant moved for a new trial, or, in the alternative, for a judgment in favor of the defendant in accordance with its previous *784 motions for a directed verdict made at the close of the plaintiff's case and at the close of the entire case. The court overruled the motion for a new trial but sustained the motion for a judgment, setting aside the verdict and judgment previously entered and entering a judgment in favor of the defendant. From this judgment for the defendant the plaintiff appeals.
On the night of May 14, 1948, the plaintiff was struck by a car operated on the defendant's Hodiamont line which runs at the point in question over a right of way. The tracks, which here go in a general north and south direction, are below the level of the adjoining land. There are two tracks with steps leading down on either side of the right of way to a waiting zone.
According to the plaintiff he and his wife, wishing to board a southbound car, went down the steps leading from Wabada Avenue. After so coming upon the right of way they were obliged to cross both tracks to reach the loading zone for southbound passengers. As the plaintiff reached the track level he looked northwardly and saw a southbound car about a block away. He and his wife started walking across the tracks with his wife a step or so ahead of him. Plaintiff last looked in the direction of the oncoming car as he reached the center of the right of way and according to his estimate it was still a block away and coming fast.
Walking slightly faster, he followed his wife across the southbound track and upon reaching the loading zone, turned facing the rails and waited for the car. He stated that he stood as he always did when waiting to board a streetcar and that he had ridden streetcars for many years. As he stood there his wife was behind him. He did not look in the direction of the approaching car which struck him and had no idea how far away it was at the time he stopped to wait for it.
Mrs. Bean, the plaintiff's wife, testified that as she reached the center of the right of way she started waving her handkerchief to signal the car to a stop. At that time it was a block away. She also said that her husband was right behind her and that they both completely crossed the tracks and reached the loading zone. She said that they did not hurry in crossing the right of way and that after reaching the loading zone her husband was standing right in front of her. She did not see the car strike plaintiff and related her recollection of the accident by saying: "I don't know if the streetcar got him or if he turned around, I couldn't tell exactly. It was so quick. * * * He just disappeared, because the streetcar passed and he disappeared with the streetcar."
A number of passengers were called by the plaintiff as witnesses but none of them had seen the car strike plaintiff. Their estimate of the speed at which the car was traveling varied from fifty miles per hour to twenty miles per hour. Other witnesses called were four young men who were walking on the right of way a block north of the Wabada stop but they had not seen the accident. They saw sparks fly from the rails as the brakes were applied and one estimated the speed of the streetcar at thirty miles per hour as it passed them.
This evidence, together with the medical testimony respecting the plaintiff's injuries, about which there is no dispute, constituted the plaintiff's case.
The operator of the car, testifying on behalf of the defendant, stated that as he approached the Wabada stop which was well lighted he was operating the car at a rate of speed between fifteen to twenty miles per hour and that seventy-five feet north of the steps leading down to the right of way he slowed to about five or ten miles per hour. He saw no one on the loading zone and increased his speed again to fifteen or twenty miles per hour. He first saw the plaintiff when he was in the center of the right of way between the two tracks and running toward the southbound loading zone. At this time the plaintiff was only five or six feet in front of the car and only two feet from the track upon which it was traveling. The operator stated that he applied the brakes and threw the car in reverse but the plaintiff came on past the center of the track and was struck by the front of the car at a point about one foot to the right of the headlight. The *785 car was brought to a stop within its own length.
Both at the close of the plaintiff's case and at the close of all of the evidence the defendant moved for a directed verdict on the ground that the plaintiff had failed to make his case. As we stated at the outset, this contention was again raised in the after-trial motion of the defendant and the court sustained its motion, vacating the verdict and judgment and entering a judgment for the defendant.
It is urged that the court erred in failing to specify the ground upon which it sustained defendant's motion for a judgment in accordance with its previous motions for a directed verdict. In support of plaintiff's contention we are cited to Johnson v. Kansas City Public Service Co., 358 Mo. 253, 214 S.W.2d 5, loc.cit. 8, wherein the court held: "The purposes of the new Code and Rules are to promote the orderly administration of justice and to seek the just, speedy, and inexpensive determination of every action. Code, §§ 2 and 10(b) [Mo.R.S.A. §§ 847.2, 847.10(b)]. When allowable after-trial motions are filed together with a motion for new trial with a prayer for relief in the alternative, the trial court, if it sustains the after-trial motion, should also pass on the motion for new trial, making its ruling in the alternative, and specify, as contemplated, the ground or grounds for its action."
It will be noted that the quoted paragraph embraces both motions for a new trial and the alternative request for a judgment in accordance with the motion for a directed verdict. It is, of course, contemplated that the trial court should specify the grounds upon which it sustains a motion for a new trial. As in this case many assignments of error are raised by such motions and the litigant and reviewing courts should not be put to the task of testing each assignment to determine which, if any, support the trial court's ruling. We do not, however, have anything here to perplex us because this motion for a judgment in accordance with defendant's motion for a directed verdict advances but one ground and that is that the plaintiff under the law and the evidence is not entitled to recover. When such a motion is sustained, it is obviously sustained on the ground stated within it. We therefore do not construe the quoted portion of the cited case to mean that the trial court should state the ground upon which such motion is sustained as that would require a wholly unnecessary act.
The petition here alleges not only humanitarian negligence but also specific acts of negligence such as excessive speed and failure to have the car under control. It is contended that the trial court should not have sustained the motion for judgment in accordance with the motion for a directed verdict if the plaintiff made a case for the jury under any theory of negligence alleged in his petition. Reliance for this assertion is rested upon Reynolds v. Thompson, Mo.Sup., 215 S.W. 2d 452; Ruby v. Clark, 357 Mo. 318, 208 S.W.2d 251; and Holmes v. McNeil, 356 Mo. 763, 203 S.W.2d 665. All these cases have to do with directed verdicts and we find announced in them the unquestioned rule to the effect that if the plaintiff made a case on any ground alleged, defendant's motion for a directed verdict should be overruled. Such motions are made at the conclusion of the evidence before the jury is instructed and before the plaintiff has informed the court of the theory upon which he wishes to submit the case; consequently if plaintiff has proven negligence within any of the allegations of the petition the court cannot direct a verdict against him. The difference between a motion for a directed verdict and an after-trial motion for judgment in accordance with the motion for a directed verdict is that at the time the after-trial motion is presented the plaintiff has made known by his requested instructions the theory upon which he stands. Here, the only instruction requested was upon the humanitarian negligence. He now contends that in passing upon the after-trial motion the court should go back to the situation as it stood when the motion for a directed verdict was requested and examine the allegations of specific negligence. Such is not the law, for when the plaintiff elected to submit his case solely *786 upon the humanitarian theory he abandoned the other allegations of negligence contained in his petition. As stated in Guthrie v. City of St. Charles, 347 Mo. 1175, 152 S.W.2d 91, loc.cit. 95: "When the defendant in his motion for new trial and on appeal renews his exceptions to the overruling of his demurrer to the evidence, it must be understood by everyone that the complaint is directed to the assignments still in the case. Whether the others were supported by substantial evidence has become a moot question. The plaintiff has waived his rights under them." See also: Swain v. Anders, 349 Mo. 963, 163 S.W.2d 1045; Hunt v. Chicago, M. St. P. & P. R. Co., 359 Mo. 1089, 225 S.W.2d 738; Bowers v. Columbia Terminals Co., Mo. App., 213 S.W.2d 663; White v. Kansas City Public Service Co., 239 Mo.App. 571, 193 S.W.2d 60.
There is but one main point for us to consider and that is whether or not the plaintiff made his case upon the theory he adopted. He maintains that he made a submissible case under the humanitarian doctrine and directs our attention to the often-repeated rule that in passing upon this point we must view the evidence and the legitimate inferences to be drawn from it, in a light most favorable to the plaintiff. There is no question that he is correct in that assertion, but he goes a step further and maintains that some of the evidence of the defendant's operator should also be weighed and considered where it is beneficial to the plaintiff's theory of the case. That rule is subject to the qualification that the plaintiff is not entitled to the benefit of the defendant's evidence when such evidence contradicts the plaintiff's own testimony and is contrary to the plaintiff's theory of the case. Heitz v. Voss Truck Lines, Mo.Sup., 175 S.W.2d 583; Trower v. Missouri-Kansas-Texas R. Co., 347 Mo. 900, 149 S.W.2d 792; Meese v. Thompson, 344 Mo. 777, 129 S.W.2d 847; Setser v. St. Louis Public Service Co., Mo. App., 209 S.W.2d 746.
We have here the operator's testimony that he first saw the plaintiff when he was five or six feet ahead of the car and running directly into its line of travel. This is completely at variance with the plaintiff's testimony, for he said he not only walked across the track but stopped and waited for the car. In weighing the evidence, we cannot with one breath assert that we must believe all of the plaintiff's testimony to be true and in the next breath adopt defendant's testimony to the contrary in order to aid plaintiff's case. It follows that the sufficiency of the plaintiff's case must here be judged upon plaintiff's own evidence, for the defendant's version is wholly at variance with the testimony of the plaintiff. This does not mean, however, that the plaintiff may not have the benefit of "facts favorable to him, developed by defendant's evidence, which his own statements do not contradict and which are not contradictory to the fundamental theory of his case." Smithers v. Barker, 341 Mo. 1017, 111 S.W.2d 47, 50.
The accepted elements of the humanitarian rule as set forth in Banks v. Morris & Co., 302 Mo. 254, 257 S.W. 482, 484, are as follows: "`(1) Plaintiff was in a position of peril; (2) defendant had notice thereof (if it was the duty of defendant to have been on the lookout, constructive notice suffices); (3) defendant after receiving such notice had the present ability, with the means at hand, to have averted the impending injury without injury to himself or others; (4) he failed to exercise ordinary care to avert such impending injury; and (5) by reason thereof plaintiff was injured.'"
Under this formula it is quite apparent that a determination of the point rests upon when the plaintiff came into a position of peril. The reason for this is that "it is settled law that a duty under the humanitarian doctrine does not arise until a situation of peril arises." Setser v. St. Louis Public Service Co., Mo.App., 209 S.W.2d 746, 755.
In commenting upon the zone of imminent peril, it was stated in Lotta v. Kansas City Public Service Co., 342 Mo. 743, 117 S.W.2d 296, 300: "In the absence of obliviousness, the position or danger zone of imminent peril of a person approaching the path of a moving vehicle *787 reaches no farther beyond the direct path of such moving vehicle than the distance within which such approaching person is unable by his own efforts to stop short of it."
Like holdings are to be found in Johnson v. Kansas City Public Service Co., 358 Mo. 253, 214 S.W.2d 5, and Elkin v. St. Louis Public Service Co., 335 Mo. 951, 74 S.W.2d 600.
If the ability to stop short before coming into the path of a moving vehicle is a proper limit on the zone of peril then the ability to step beyond the zone is an equally logical limitation. Neither limitation would apply, however, in the absence of obliviousness. In other words, if a person conscious of an approaching vehicle stops suddenly when almost clear of it and has at the time he stops ample time and ability to reach safety by proceeding ahead he is not in a position of peril until he stops.
Here we have a situation where the plaintiff with sufficient time to cross the tracks did cross them and then stopped within the overhang of the car. He does not contend that he lacked sufficient time to clear the overhanging portion of the car by proceeding forward, for he said that he stopped and waited. We do not know where the car was at this time or whether the plaintiff used the term "waited" to indicate a mere pause or the passage of seconds. This state of facts fixes the time when the duty arose, to the first instant the plaintiff could be seen by the defendant's operator standing within the overhang of the car. The defendant's evidence as to the time in which the car could have been stopped is of no value to the plaintiff when his own evidence fails to place the position of the streetcar at the time his peril arose. It is obvious that if the plaintiff paused or stopped and waited when the car was directly upon him the operator, with the means at hand, could not have avoided striking him.
For the reasons stated, it appears that the plaintiff failed to make a case properly submissible under the humanitarian rule, and it is therefore the recommendation of the Commissioner that the judgment of the circuit court be affirmed.
PER CURIAM.
The foregoing opinion of WOLFE, C., is adopted as the opinion of the court.
The judgment of the circuit court is accordingly affirmed.
ANDERSON, P. J., and McCULLEN and HOUSER, JJ., concur.