Jameso FUZZELL, Plaintiff-Appellant,

v.

Lottie WILLIAMS, Defendant-Respondent.

No. 7446.

Springfield Court of Appeals.
Missouri.

March 14, 1956.

Dalton, Treasure & Dalton, Kennett, Wangelin & Friedewald, Poplar Bluff, for plaintiff-appellant.

Blanton & Blanton, Sikeston, for defendant-respondent.

RUARK, Judge.

In this automobile collision case defendant Williams pleaded and submitted (a) primary negligence in exceeding ordinance speed of 30 miles per hour and (b) humanitarian negligence in failing to swerve or slacken speed. At close of the case plaintiff Fuzzell moved for directed verdict on the grounds defendant (1) failed to prove primary negligence, (2) failed to prove humanitarian negligence, (3) was guilty of contributory negligence. A jury having returned a verdict against the petition and in favor of the counterclaim, the plaintiff filed timely notice under Section 510.290, RSMo 1949, V.A.M.S., for judgment in accordance with the motion for directed verdict. The same being overruled, he has appealed.

No motion for new trial was filed, and we are therefore left to consider only whether defendant made a submissible case on her counterclaim. If the evidence substantiates her recovery on either primary or humanitarian negligence the case must be affirmed. DeLay v. Ward, 364 Mo. 431, 262 S.W.2d 628; Bean v. St. Louis Public Service Co., Mo.App., 233 S.W.2d 782.

We endeavor first to set forth the facts from a viewpoint most favorable to the defendant. The positions of the parties being reversed, it will be less confusing to refer to them by name. We have had some difficulty in interpreting a portion of the evidence for the reason that some of the witnesses were examined and the testimony they gave was in reference to a plat which appellant used, offered and had received in evidence as an exhibit. This plat exhibit does not appear in or with the transcript, and in the absence of such, where the testimony is not clear by reason of the lack of the exhibit to which it refers, we will take the intendments as favorable to the trial court's ruling and against the appellant. Smith v. Wilson, Mo.App., 296 S.W. 1036; Cooper v. Massachusetts Bonding & Ins. Co., 239 Mo.App. 67, 186 S.W. 2d 549; Weintraub v. Abraham Lincoln Life Ins. Co., Mo.App., 99 S.W.2d 160;

State ex rel. City of Maplewood v. Southern Surety Co., 323 Mo. 150, 19 S.W.2d 691.

The collision occurred at the junction of South Jackson Avenue and Eighth Street in Kennett, Missouri. This was a "T" intersection. Jackson Street runs continuously in an approximate north and south direction, while Eighth Street approaches from the east and dead-ends where it enters Jackson. On the west side of Jackson and opposite the Eighth Street entrance is a grocery store which sits back approximately 30 feet to the west, and the space between this store and the west side of Jackson is open, unditched, unobstructed and upon approximate street level. It is used presumably by customers of the store in driving and parking their automobiles, although it was not so occupied at the time of the occurrence here involved. Both streets at this location are approximately level. Neither appears to have had paving, curb, gutter or sidewalks. Jackson was finished with gravel and Eighth, the entering thoroughfare, was described as being a sand street. Appellant Fuzzell's witness says Jackson was 30 feet wide. The width of Eighth is not made clear, although appellant's counsel in his examination assumed it to be 40 feet in width. Nor is the width of the "traveled portion" of the two streets established with certainty. At the southeast corner of this intersection was a picket fence which extended from the corner south along the east side of Jackson and, for some distance not shown in the evidence, easterly along the south side of Eighth Street. Interspersed in or imposed upon and about this fence was a hedge made of shrubs or vines, or both, which reached some six feet in height. There was substantial evidence from which a jury could have found that such hedge effectively blocked the vision of persons in automobiles as they neared and were about to enter the intersection from the east or south. A stop sign was located on the north side of Eighth Street. This was placed somewhere between four and seven feet back or east from the intersection.

Shortly prior to the collision appellant Fuzzell was driving a Buick coming up Jackson and approaching the intersection from the south. At the same time respondent Williams approached in a Chevrolet coming from the east and intending to make the turn to her left and go south. The collision occurred at some point, not definitely shown, shortly after the front end of the Williams Chevrolet had entered upon the intersection. Mrs. Williams testified that in coming up from the east she stopped with the front end of her car "just almost" up to (east of) the stop sign. After making her stop she changed gears and was "just barely moving" as she proceeded toward entering Jackson Street.

"Q. Now, Mrs. Williams, which side of the road, that is, which side of 8th Street, and I indicate the diagram, which side of 8th Street were you on as you approached this intersection? A. I was on the right hand side.

"Q. On the right hand side? A. Yes, sir.

"Q. All the way over to the right? A. Well, I am sure I was, until I started into the turn, where I could pull out enough to see South Jackson.

"Q. Now, Mrs. Williams, where were you in relation to the south line of 8th Street, when the front of your car was at the, even with the fence along South Jackson, where was your car in relation to the south line of 8th Street? A. Well, Mr. Dalton, I am no judge of feet,—

"Q. When the front of your car was even with this fence, you know where the fence is? A. Yes, sir.

"Q. When the front of your car was even with that fence, where was the left side of your automobile in relation to South 8th Street? A. Well, I am sure it must have been somewhere near the center of the street. As I said, I don't know exactly the amount of feet.

"Q. The center of 8th Street? A. Yes, sir, left side of my car was."

At this point she still could not see down Jackson Street to the south. She continued moving, going so slowly that she said the speedometer was not registering, and at all events less than five miles per hour, and the front end of her car went out into Jackson Street. A fair inference is that the car went into the intersection at some angle, because the only damage to her car indicated an impact at the right front corner, and the force of such impact drove her car backward so that when the sound and fury of the collision were done her car was sitting on Eighth Street, the front facing the intersection, some six feet from the Jackson Street line. Appellant Fuzzell's witness Ramsey testified that after the collision he found some debris lying some 12 feet northwest of the southeast corner of the intersection, but at what angle, and what area the debris covered, and whether that he mentioned was the southernmost or easternmost part of the debris area is not shown. As to just what speed Fuzzell was making when he entered the intersection the jury had considerable choice. Mrs. Williams said it was "terrific" at the time of the impact. The extent of the damage to the automobiles, and the fact that the Williams car was, while apparently in gear, by a glancing blow driven backward and completely off the intersection a distance of at least six feet, would permit the inference that the speed of Fuzzell's car was high. Mrs. Williams's witness Knight testified he saw the Fuzzell Buick coming up Jackson "just this side of" the next intersection to the south and at that time it was going 35 to 40 miles per hour. Fuzzell's witness Ramsey testified he examined the tracks made by Fuzzell's Buick and ascertained that he first applied his brakes some 50 or 51 feet south of the intersection; that these tracks continued north until about 25 to 30 feet south of the south line of the intersection, at which point they began to bear to the left, and at the time they reached some point in the intersection (just where is not made clear) they had veered to the left from their original course some

four to six feet. Such tracks continued in a swerve to the left (evidently after the impact) and then swerved back to the right and went into the ditch on the east side of Jackson Street some 50 feet north from where the Williams car was sitting after the accident. Appellant Fuzzell himself testified that Jackson was rough or "washboard," that he approached the intersection at a speed of 20 to 25 miles per hour, that he arrived at the intersection before the Chevrolet, that it first came into his view when he was 10 or 15 feet south and that when he saw it he immediately tried to jerk his car to the left in order to avoid the collision, but the Chevrolet ran into him. He stated that he had no recollection of putting on his brakes, that the whole of his Buick (some 17 to 20 feet long) was in the intersection with his right wheel about the middle of Jackson Street at the time the collision occurred; that because of the impact he lost control of his car and went into the ditch on up the east side of Jackson north of the intersection. Damage to the Fuzzell Buick was on the front and along the right side.

In passing upon the question it is not our province to determine who, if anyone, was guilty of negligence, but whether there was any probative evidence by which the jury could have reached its conclusion. If so the verdict must be upheld. In making our examination we must take and assume as true all evidence, whether coming from plaintiff's or defendant's witnesses, which is favorable to Mrs. Williams and indulge all reasonable inferences therefrom in her favor. Feldotto v. St. Louis Public Service Co., Mo.App., 285 S.W.2d 30; Johnson v. Thompson, Mo. App., 236 S.W.2d 1. The exception to this is that the evidence which we must assume as true must not be contradictory of her theory of the case. Reimers v. Frank B. Connet Lumber Co., Mo.Sup., 271 S.W.2d 46; O'Donnell v. St. Louis Public Service Co., Mo.App., 246 S.W.2d 539. We must discard and refuse to consider all evidence which is unfavorable to her theory except such statements, if any, made by her which amount to judicial admissions. Smith v.

Siercks, Mo.Sup., 277 S.W.2d 521; Dennis v. Wood, 357 Mo. 886, 211 S.W.2d 470. And if the state of the evidence is such that there is room for disagreement by reasonable minds the result found on the facts by the jury must stand. DeLay v. Ward, 364 Mo. 431, 262 S.W.2d 628, supra; Holmes v. McNeil, 356 Mo. 763, 203 S.W. 2d 665; Trower v. Missouri-Kansas-Texas R. Co., 347 Mo. 900, 149 S.W.2d 792. Each case must be decided on its own peculiar circumstances. Williamson v. St. Louis Public Service Co., 363 Mo. 508, 252 S.W. 2d 295; Harding v. Peterson, Mo.App., 227 S.W.2d 88.

With this as our guide we cannot say the jury could not have found that Fuzzell was guilty of negligence in driving his automobile in excess of the ordinance speed of 30 miles per hour. Neither can we say that reasonable minds were necessarily required to find Mrs. Williams was guilty of contributory negligence under the circumstances shown here.

Mrs. Williams testified she did not see Fuzzell's car until the time of the impact, and appellant directs considerable of his argument in respect to contributory negligence as a matter of law to the fact that she said she did not look to the south. This testimony is as follows:

"Q. Now, as you made your stop and when you made your stop, did you stop and look both directions for traffic proceeding either direction on South Jackson Street? A. You couldn't see either direction.

"Q. I didn't ask you that, ma'am, did you look? A. I didn't look.

"Q. You didn't look? A. I didn't look, because you can't see. All you can see is straight ahead of you."

We think this contention cannot stand for the following reasons. First, her statement is susceptible of the interpretation that what the witness really meant was that she did not see or visualize because of the impossibility, rather than that she made no attempt to do so. Second, it should be noted that this testimony refers to the time she stopped with the front of her car "almost up to" the stop sign, which was some four to seven feet back from the Jackson Street line. After this stop she changed gears and proceeded onward in her attempt to enter Jackson Street and make a turn to her left. There is no testimony that she failed to look or attempt to observe from that time onward. There is evidence from which the jury could well have found that the intersection was blind from there on and until the front end of her car protruded into Jackson. On one occasion Mrs. Williams testified:

"Q. What was necessary for you to do before you could see south on South Jackson? A. Well, I never did get to see down south. I would have had to even roll out further into the street. He got the front end of my car before I got up far enough for me to see.

"Q. In other words, you hadn't gotten into South Jackson? A. No, sir, not far enough for me to have vision south."

It is true that one who is under a duty to look is charged with seeing that which could have been seen. Branscum v. Glaser, Mo. Sup., 234 S.W.2d 626; Frandeka v. St. Louis Public Service Co., 361 Mo. 245, 234 S.W.2d 540. But the law does not require the impossible; one cannot be held guilty of contributory negligence because he is unable to see through impenetrable objects or bend his vision around them. If Mrs. Williams could not see Fuzzell's car she is not to be charged with negligence in not seeing it. See Levin v. Caldwell, Mo.Sup., 285 S.W.2d 655. Nor in this situation, absent special and unusual circumstances not shown to be present here, is the driver of an automobile obliged to dismount and go around in front to reconnoiter. Moore v. Fitzpatrick, Mo.App., 31 S.W.2d 590; Doyel v. Thompson, 357 Mo. 963, 211 S.W.2d 704; Rentfrow v. Thompson, 348 Mo. 970, 156 S.W.2d 700. Such would be a useless procedure in city traffic where the conditions could change within seconds. Third, assuming the statement of the witness as ac-

cording with the interpretation given by the appellant, to-wit, that Mrs. Williams simply stopped at the stop sign and never then or thereafter tried to look to the south, it would still have been a jury question as to whether her failure to look at such time and place had any causal connection with the collision. While we do not judicially know the distance from the front end of the Chevrolet to the place where the driver sits, we do know that the front end of the car would necessarily precede her person out into what proved to be a zone of danger, while, as the jury could have found, she was still unable to see. The angle of her vision to the south would widen as she approached to or upon the intersection as she drew even with the hedge, but the last portion of Jackson to come within her vision would be that which would be traveled by an automobile approaching northward along the east side of such street behind the hedge. At the time when she *could*, in the exercise of the highest degree of care, have seen the approach of the Fuzzell automobile, so the jury could have found or inferred, her car was already in the position where it was struck and it was then too late for her to do anything to avoid the collision, which occurred almost instantaneously; hence her failure to see or observe in that direction could have had no causal connection with the occurrence. Contributory negligence, in order to defeat recovery, must be such negligence as contributed to cause the occurrence. Triplett v. Beeler, Mo.Sup., 268 S.W.2d 814; Rentfrow v. Thompson, 348 Mo. 970, 156 S.W.2d 700. As was said in Albert H. Hoppe, Inc., v. St. Louis Public Service Co., Mo.App., 227 S.W.2d 499, 502, "This follows the earlier statement that 'The rule as to the quantum of contributory negligence which is sufficient to prevent recovery is that it must be such as to enter into and form the direct, producing, and efficient cause of the casualty, and absent which the casualty would not have happened.' Howard v. Scarritt Estate Co., 267 Mo. 398, 184 S.W. 1144, 1145."

Having found the defendant made a submissible case on primary negligence, there is no need to lengthen this opinion by considering whether plaintiff was liable under the humanitarian doctrine, and the case must be affirmed. It is so ordered.

McDOWELL, P. J., and STONE, J., concur.