H. E. RENTFROW ET AL. v. GUY A. THOMPSON, Trustee of the MISSOURI PACIFIC RAILROAD COMPANY, a Corporation, Appellant.—156 S. W. (2d) 700.

Division One, December 12, 1941.

*Thos. J. Cole* and *McReynolds & Flanigan* for appellant.

*Kelsey Norman, Henry Warten* and *Alfred K. Lee* for respondents.

HAYS, J.—The respondents H. E. Rentfrow and Anna C. Rentfrow, his wife, father and mother of Robert E. Rentfrow, deceased, an unmarried minor, filed the present action in the Circuit Court of Jasper County against Guy A. Thompson, trustee in bankruptcy of the Missouri Pacific Railroad Company, to recover the penalty provided for by Section 3652, R. S. Mo. 1939 (Sec. 3262, Mo. Stat. Ann., p. 3353) for the death of their son which they allege was caused by the negligence of defendant's agents and servants. From a verdict and judgment in favor of the plaintiffs the defendant appealed.

The plaintiffs' petition relies upon the humanitarian doctrine and also upon primary negligence. The primary negligence alleged consisted (1) in the violation of an ordinance of the City of Joplin, within the corporate limits of which the fatal accident took place, which ordinance limited the speed of trains to fifteen miles per hour; (2) the failure to give proper warning of the approach of the train; and (3) the failure to maintain a watchman or automatic signal device at the crossing. The answer, in addition to denying the allegations of the petition, pleads contributory negligence of the deceased in that

he drove upon the grade crossing here involved without looking and listening and thereby failed to learn of the approach and proximity of the train. The case was submitted to the jury on both humanitarian and primary negligence.

The accident here involved took place at a grade crossing in the City of Joplin at which Central Avenue, a public street, passes over the defendant's track. Central Avenue runs east and west. The railroad track describes an arc but at the exact point of the crossing runs in a more or less north and south direction. Deceased, a WPA worker, was driving his truck along Central Avenue from a point west of the crossing toward a destination lying east thereof. He was struck and killed by a passenger train which approached the crossing from the south going north.

As to the exact facts of the accident the evidence is sharply in conflict. Plaintiffs' evidence tends to show that the deceased drove up to and upon the railroad track and when the front wheels of his truck had crossed the west rail his motor stalled. He attempted to get started again but was actually standing on the track trying to start for a period estimated to be from twelve to fifteen seconds. Defendant's train, approaching from the south, had whistled some blocks away for another crossing, but did not again whistle until the engine was within fifty or sixty feet of the stalled truck.

Defendant's evidence, on the contrary, tends to show that the deceased ran up to the track, killed his engine and then allowed the car to coast back five or six feet, which brought him clear of the overhang of the engine's pilot. He then started up again and ran onto the track immediately in front of the train. Defendant's witnesses testified that the engine bell was ringing constantly and that the engineer started to blow his whistle for the Central Avenue crossing about a quarter of a mile to the south thereof and continued to whistle until after the collision.

There is also a conflict in the evidence as to the visibility of the track toward the south from the crossing. As stated, the track describes an arc on the inside of which to the east there is a considerable hill. West of the track there is a small embankment which, from the photographs introduced in evidence, appears to only partially hide an approaching train. Still further west and on the south side of Central Avenue there is a house with outbuildings. Between the house and the embankment there is a point from which one driving along Central Avenue can see down the track for some distance. The driver again gets a view of the track after passing the embankment and reaching a point about twenty-five feet or more west of the track. Plaintiffs' evidence tends to show that within this last mentioned space of twenty-five feet the view of the track to the south is limited to from four hundred to six hundred feet. The weight of the evidence for plaintiffs is that the track is visible for five hundred feet. On

974

the contrary defendant's evidence tends to show that the track is visible for a much greater distance to the south.

It is admitted that the accident took place within the corporate limits of the City of Joplin and that there was then and there in full force and effect an ordinance of said city, known as Section 1477 of its municipal code, which forbids any railroad train to be operated at a speed greater than fifteen miles per hour.

Plaintiffs' witnesses placed the speed of defendant's train at from forty to sixty miles per hour. Certain of defendant's witnesses testified that the train was moving forty miles per hour, but the engineer placed its speed at from thirty-five to forty miles per hour.

Defendant sought instructions withdrawing the issue of primary negligence from the jury and also, at the close of plaintiffs' case and again at the close of all of the evidence, requested a directed verdict.

 The appellant complains of the submission of the case under the charge of primary negligence. As the basis for this contention he contends that the evidence disclosed the fact that deceased was guilty of contributory negligence as a matter of law in failing to stop, look and listen for the approaching train. Contributory negligence, of course, is ordinarily a matter of defense. It must be specifically pleaded by the defendant and the burden of proving it rests upon the defendant. [Todd v. St. Louis-San Francisco Railway Co. (Mo.), 37 S. W. (2d) 557.] But it is also true that where the plaintiff's own evidence definitely establishes that he is guilty of contributory negligence he is not entitled to go to the jury under a charge of primary negligence. Appellant cites numerous cases which hold that a plaintiff who enters upon a railroad track in front of an approaching train without looking and listening is guilty of contributory negligence as a matter of law. [Monroe v. Chicago & Alton Railroad Co., 297 Mo. 633, 249 S. W. 644; Burge v. Wabash Railroad Co., 244 Mo. 76, 148 S. W. 925; Scott v. Kurn, 343 Mo. 1210, 126 S. W. (2d) 185; Hayden v. M., K. & T. Railway Co., 124 Mo. 566, 28 S. W. 74.] It is well settled that a person who enters upon a railroad track to cross the same must use due care for his own safety. Under ordinary circumstances he is required to look and listen for approaching trains and where the circumstances so require it is sometimes necessary for him to stop. It is not, however, ordinarily necessary for him to leave his automobile and to go ahead and reconnoiter. [Pokora v. Wabash Railway Co., 292 U. S. 98, 78 L. Ed. 1149.] However, it is also well established that the negligence of the plaintiff in this regard cannot bar his recovery unless it were one of the causative factors producing the accident. Contributory negligence must contribute. It need not be the sole cause of the accident but it must concur with the negligence of the defendant as one of the proximate causes producing the result complained of by the plaintiff. [Connole

v. East St. Louis & S. Railway Co., 340 Mo. 690, 102 S. W. (2d) 581, l. c. 588; Pokora v. Wabash Railway Co., supra.]

█ With these general principles in mind we examine the facts of the present case. Even though defendant's evidence should show that deceased was guilty of negligence in failing to look and listen before entering upon the crossing, this fact alone would not deprive the plaintiffs of the right to submit the issue of primary negligence to the jury. For the defendant to maintain his position here he must show that plaintiffs' own evidence, taken in the light most favorable to them, established the contributory negligence of the deceased. According to plaintiffs' witnesses the deceased entered on the railroad track from twelve to fifteen seconds before he was struck by the train and remained there during all of that time trying to start his stopped motor. According to plaintiffs' evidence, also the deceased could have seen the approaching train first when it was approximately five hundred feet south of the crossing. Taking the speed of the train at forty miles per hour we find that it covered 58.66 feet per second. Therefore, if it first emerged into view five hundred feet south of the crossing, this would have been a little over eight seconds prior to the collision. So, when deceased came on the track twelve to fifteen seconds before the collision, he could not possibly have seen the approaching train even if he had looked. Nor is there any evidence that at that time he could have heard the train approaching. It follows that even had he looked and listened his action in going on the track could not have been changed thereby, and his failure to look and listen could not possibly constitute a contributing causative factor to the accident.

█ Appellant next complains of the failure of the court to direct a verdict in his favor on the issue of humanitarian █ negligence. In this connection defendant relies solely upon the evidence favorable to himself. The question of the submissibility of the case must, of course, be judged on the basis of the evidence favorable to plaintiffs, disregarding any conflicting evidence favorable to the defendant and drawing all reasonable inferences in support of the plaintiffs' case. Defendant contends that the engineer, when he first saw decedent's truck, had a right to assume that the deceased would stop before going on the railroad track. [Stanton v. Jones, 332 Mo. 631, 59 S. W. (2d) 648.] This, however, is based upon the assumption that as the engineer rounded the curve and first saw the deceased's truck that the vehicle had not as yet reached the crossing. The engineer indeed so testified. But on the other hand, if we believe plaintiffs' evidence, the deceased at that time was actually on the crossing and had stopped. The engineer, therefore, had he looked at the first opportunity could have and would have seen the truck stalled on the track and not merely approaching the track. Thereafter he had a period of something over eight seconds within which to warn the deceased

of the approach and proximity of the train. According to his own admission his hand was then resting upon the whistle cord, and he could have sounded the whistle in less than one second's time. But plaintiffs' evidence tends to show that no warning was given until the engine was within fifty feet of the stalled truck. It is apparent, then, that taking the plaintiffs' evidence as true, as we must upon a request for a directed verdict, the cause was properly submitted on the humanitarian doctrine.

There was also clear evidence of primary negligence of this defendant so that the cause was properly submitted upon that issue also. The trial court did not err in refusing to direct a verdict for the defendant.

Appellant next complains of the action of the trial court in giving to the jury, at the request of the plaintiffs, Instruction No. 6. This instruction told the jury that if they found that the deceased was confronted with a situation of sudden emergency because of the fact that his truck had become stalled on a railroad track, that he was not required to act with the same calm deliberation which might have been required in the absence of such emergency. The form of the instruction is not attacked nor is any complaint leveled against the general theory of action in emergency presented therein. The only objection made to the instruction is that it is in conflict with plaintiffs' Instruction No. 1, which submitted the humanitarian issue to the jury. The supposed conflict lies in the fact that the humanitarian instruction requires the jury to find that deceased was in a position of peril and oblivious thereto, while Instruction No. 6 requires them to find that he acted in an emergency because he knew that he was in peril. In the first place, we may point out that obliviousness is not a necessary element under the humanitarian doctrine. It becomes important only as fixing the exact limits of the zone of peril and extending such zone beyond the actual path of defendant's approaching vehicle. Where, as here, the deceased is actually in the path of the approaching vehicle, he is within the zone of peril regardless of whether or not he is oblivious to the conditions surrounding him. However, in any event the plaintiffs had a right to submit their case on two alternative theories. One of these theories was the humanitarian doctrine which assumed contributory negligence on the part of the deceased. Under this theory obliviousness if found by the jury might play some part. The other theory was that of primary negligence and under it the plaintiffs could recover only in the event that deceased was not contributorily negligent. Here the emergency doctrine would play a proper role. If, then, the plaintiffs were entitled to submit their case on both theories in the alternative, the fact of an inconsistency in the two instructions would not make their giving erroneous. In other words, the jury might find that the deceased was contributorily negligent and was oblivious

to his position of peril, but that despite this contributory negligence the defendant was liable because its agents could have discovered deceased's peril and thereafter could have warned deceased in time to have avoided the accident by the use of instrumentalities at hand and without endangering others; or the jury could find from the evidence that defendant was primarily negligent and that deceased was not oblivious to his peril but was confronted by a sudden emergency in the light of which his conduct measured up to the standard of care required ▆▆ of the ordinary man acting in an emergency, in which event also the plaintiffs would be entitled to a verdict. Both fact situations could not be true but the jury might well find either one or the other to be true and in either event they would properly return a verdict for the plaintiffs.

▆▆ Appellant next complains of the giving of Instruction No. 9, to the effect that the deceased had a right to presume that defendant's train would not be operated at a greater speed than fifteen miles an hour as required by the ordinance. Appellant says that deceased must have been familiar with the fact that it was common practice to run trains over this crossing faster than fifteen miles per hour. But the evidence does not sustain such contention. It was shown that deceased had been working in the neighborhood only two or three days. There was no evidence at all that he was familiar with the speed of trains on that line. Appellant cites the case of Reeves v. Kansas City, St. Louis & Chicago Railroad Co., 251 Mo. 169, 158 S. W. 2. In the Reeves case it was shown that deceased actually saw the approaching train, while there is no evidence here that the deceased in this case ever saw the train before it hit him. Obviously, in the face of the fact that a plaintiff sees a moving train which is travelling forty or fifty miles per hour, it is erroneous to tell a jury that he could rely on the assumption that the train would not move faster than fifteen miles per hour; but such is not the evidence in this case. In the case of Dove v. Atchison, T. & S. F. Railway Co. (Mo. App.), 140 S. W. (2d) 715, there was evidence that deceased knew the fact that the city speed ordinance was perpetually ignored by railroads. Here again if a person knows that an ordinance is not being obeyed, he has no right to assume that it will be obeyed in the future; but there is no evidence of this kind in the present case. In the absence of such evidence, the right to rely upon the railroad's obedience to the ordinance is clearly established. [Hutchinson v. Missouri Pacific Railway Co., 161 Mo. 246, 61 S. W. 635; Eswin v. St. Louis, I. M. & S. Railway Co., 96 Mo. 290, l. c. 295, 9 S. W. 577; Kellny v. Missouri Pacific Railway Co., 101 Mo. 67, 13 S. W. 806, 8 L. R. A. 783.] We therefore hold, that the giving of Instruction No. 9 was not erroneous.

What we have said above in regard to the propriety of giving to the jury plaintiffs' instructions submitting the issue of primary negligence disposes of the contention that defendant's withdrawal

instructions seeking to withdraw such matters from the jury should have been given. The sole argument made in support of these withdrawal instructions is that deceased was guilty of contributory negligence as a matter of law and we have, in a previous portion of this opinion, held that deceased was not guilty of contributory negligence as a matter of law.

Appellant's final contention is that the trial court erred in admitting evidence as to the condition of the railroad crossing. The evidence complained of was to the effect that the crossing was rough; that the ground between the rails was hollowed out and was not filled with gravel, macadam or concrete and that one of the planks alongside the rails was missing. It is said that under the present petition there was no proper charge of negligence on this ground made against the defendant and that evidence tending to establish such a charge of negligence was improper. The evidence, however, was not admitted with the purpose of convicting the defendant of negligence in maintaining an improper crossing. It was offered and received by the court solely for what bearing it might have on the defense of contributory negligence. In other words, it was offered for the purpose of showing how and why deceased's truck became stalled on the crossing and that after it became stalled deceased was confronted with a sudden emergency, so that he was not required to act with precision of judgment and calm deliberation. It is an elementary principle that where certain evidence is competent for one purpose but incompetent for another it must be received, although the opponent has the right to request instructions limiting the application of the evidence. No such instructions were requested here and the court in admitting it ruled that it could come in for one purpose only and that is the one above outlined. Hence no error was committed in this regard.

We have examined the record carefully and fail to find therein any error prejudicial to the appellant. The judgment below must accordingly be affirmed. It is so ordered. All concur.