**Edythe MALLOW (Plaintiff), Appellant,**

**v.**

**Jack TUCKER (Defendant), Respondent.**

No. 44451.

Supreme Court of Missouri.

Division No. 1.

July 11, 1955.

Motion for Rehearing or to Transfer to Court en Banc Denied Sept. 12, 1955.

Hullverson & Richardson, St. Louis, for appellant.

Moser, Marsalek, Carpenter, Cleary & Carter, Lee M. Carter, St. Louis, for respondent.

HOLMAN, Commissioner.

Plaintiff Edythe Mallow (appellant) instituted this action seeking to recover damages in the sum of $27,500 for personal injuries sustained when her car was struck by an automobile driven by defendant (respondent) Jack Tucker. The verdict of the jury was for the defendant. Plaintiff has appealed.

The collision occurred at the intersection of Natural Bridge Road and New Brown Road (also referred to as Airport Road) in Berkeley, St. Louis County, Missouri. The speed limit at that point in said city is 30 miles an hour. Defendant was westbound on Natural Bridge Road and plaintiff was proceeding south on Airport Road.

At the place of collision Natural Bridge is a divided highway with its two westbound lanes (24 feet wide) separated by a dirt strip (26 feet wide) from the two eastbound lanes. There is a cross-over drive between the east and westbound lanes of Natural Bridge Road at this intersection. A stop sign for traffic southbound on Airport Road is located 28½ feet north of Natural Bridge.

On February 19, 1953, at about 3 p. m., plaintiff was driving a 1951 model Studebaker south on Airport Road accompanied by her sister-in-law, Mildred Williamson. According to her testimony she stopped at the stop sign, looked east and saw cars about 1½ or 2 blocks away approaching at a speed which appeared to her to be about 35 or 40 miles an hour. A car ahead of her had already crossed the westbound lanes of Natural Bridge and stopped in the cross-over,

apparently waiting for eastbound traffic to clear so that it could make a left turn and proceed east. Plaintiff pulled into and across the westbound lanes of Natural Bridge at a speed of from 10 to 15 miles an hour. She then stopped behind the car that was in the cross-over, leaving the rear end of her car protruding 4 or 5 feet into the westbound traffic lanes. Plaintiff had not looked to her left after leaving the stop sign. She had thought that the car ahead would have pulled away by that time so that she could clear the westbound lanes. Within a second or two after stopping, the left rear of her car was struck by the left front of defendant's automobile. She had heard no signal or sound of tires or brakes before the collision. Plaintiff was thrown from the car and rendered unconscious. The extent of her injuries will not be described as such is not material to the issues here presented.

According to defendant (and the person in the front seat of his car) he was driving in the left lane of the westbound portion of Natural Bridge at a speed of from 30 to 40 miles an hour. Defendant saw plaintiff when her car was 25 feet north of Natural Bridge and going from 20 to 25 miles per hour. He was then from 40 to 50 feet east of the center of the intersection. At that point defendant realized that plaintiff was going to enter Natural Bridge without stopping and knew he could not stop so he applied his brakes and swerved to the right in an effort to avoid the collision. The rear end of plaintiff's car was near the center of the westbound portion of Natural Bridge when it was struck by defendant's car. Defendant stated that plaintiff had "just crashed into the highway" without stopping, slowing down or looking.

Defendant also presented Ray McCormick of Martinsburg, Missouri, who stated that at the time in question he was employed in St. Louis County by Vernon Boyd, a plumber. He testified that he had been driving his car east on Natural Bridge and intended to turn north on Airport Road. Making a left turn, he stopped in the cross-over because of the approach of defendant's car. He was headed north and his was the only automobile in the cross-over. At that

time he noticed that defendant's car was 60 feet east of the intersection going 35 miles an hour and was passing a truck being operated in the north or right westbound lane. Plaintiff was 30 feet north of Natural Bridge going about 10 or 15 miles per hour. The witness stated that plaintiff proceeded into Natural Bridge without reducing her speed and defendant, although swerving his car the last 8 or 10 feet, collided with plaintiff's car at about the center of the westbound portion of Natural Bridge. Plaintiff's counsel apparently had not known of this witness before he took the stand. Upon cross-examination McCormick stated that he stayed at the scene of the accident 3 or 4 minutes and left before the police arrived without giving his name to anyone. He later told his boss that he had seen the accident and was contacted the following November by a Mr. Meyer, a lawyer investigating the case.

In rebuttal, both plaintiff and a nearby resident, Jean Thurman, testified that there was no car in the cross-over facing north.

Plaintiff's case was submitted on the primary negligence of defendant in failing to keep a lookout and excessive speed (Instructions 1 and 2) and upon humanitarian negligence in failing to swerve and thus avoid the collision (Instruction 3). As a defense to the charges of primary negligence the defendant requested, and the court gave, Instruction No. 4 on plaintiff's contributory negligence which is as follows:

"The court instructs the jury that if you find and believe from the evidence that on the occasion referred to in evidence plaintiff was operating her automobile southwardly on Airport Road, and defendant was operating his automobile westwardly on Natural Bridge Road, and if you find that when plaintiff was approaching Natural Bridge Road and about to enter the intersection, defendant was then in close proximity to the intersection and plaintiff's line of travel, and if you find that plaintiff could have seen the approach and movement of defendant's automobile and if you find that by reason of the movement and positions of the two automobiles there was imminent danger of a collision if plaintiff entered onto Natural Bridge Road, and that plaintiff could have stopped before crossing Natural Bridge Road and that she failed to stop and drove forward into the path of the westbound automobile operated by defendant, and if you further find that in so operating her automobile plaintiff was negligent and that such negligence, if any, on her part, directly contributed to bring about the collision between the two automobiles and whatever injuries plaintiff sustained, then you are instructed that plaintiff is not entitled to recover under Instructions Nos. 1 or 2, and your verdict will be in favor of the defendant, unless you find for the plaintiff under Instruction No. 3."

Plaintiff assigns as error the giving of this instruction, contending that it was too general in its terms, omitted essential requirements, and permitted a verdict for defendant solely because plaintiff did not stop before being struck, irrespective of whether she could have noticed the peril of collision or could have stopped thereafter in time to avoid being struck, and that the proof failed to show that she could have so stopped.

We have concluded that error was committed in the giving of this instruction. It is confusing and difficult to understand. One familiar with the phraseology of instructions, much less a jury, upon reading the instruction would not clearly or definitely understand the theory upon which plaintiff's alleged contributory negligence was submitted. It combines some of the elements of primary negligence in submitting plaintiff's failure to stop, under the circumstances, before entering upon the highway, with the elements of humanitarian negligence of failure to stop after discoverable peril arose. Regardless of which type of contributory negligence it is intended to submit, the instruction is incomplete and erroneous.

Considered from the standpoint of a submission of humanitarian negligence the instruction fails to include the elements

"that plaintiff in the exercise of the highest degree of care saw or could have seen defendant in a position of peril in time thereafter for plaintiff, with safety to herself and the occupant of her car to have stopped her automobile and thus avoided the collision," etc. Also, if this were a humanitarian submission and hence required a finding that plaintiff could have stopped her automobile, it was error to give the instruction because there was absolutely no evidence in the record of the distance in which plaintiff's Studebaker could have been stopped under the conditions shown by the evidence. If defendant intended this instruction as a humanitarian submission he should have presented evidence to support this element of his defense. We cannot take judicial notice of the exact distance within which a certain automobile may be stopped under given conditions. McCombs v. Ellsberry, 337 Mo. 491, 85 S.W.2d 135. There have been instances in which we have taken notice of certain limits within which a stop could be made. Dister v. Ludwig, 362 Mo. 162, 240 S.W.2d 694. However, in the instant case, when we consider reaction time, the speed of the car, the distance involved and other circumstances in evidence, we cannot judicially know that plaintiff could have brought her car to a stop, after discoverable danger arose, in time to have avoided the collision.

■■ The fact that defendant failed to present evidence of plaintiff's ability to stop her car leads us to believe that he probably intended that this instruction submit plaintiff's primary negligence in failing to stop. In that event, it would not have been necessary to include in the instruction the phrase, *"and that plaintiff could have stopped before crossing Natural Bridge Road,"* and evidence would not have been required to support this element of the case. If plaintiff had a duty to stop (required by all the circumstances) before going on to the highway, then the failure to do so was negligence (primary negligence) whether plaintiff could have done so at any particular time or after any particular position of defendant's car was reached. However, when viewed as a primary negligence submission, the instruction is erroneous because it fails to give the jury any standard of care upon which to base a duty to act, but, on the contrary, seems to be on the theory that plaintiff had an absolute duty to stop. It should have stated the degree of care required of plaintiff. Toburen v. Carter, Mo.Sup., 273 S.W.2d 161. We suggest that the essential requirements omitted might have been supplied if the phrase, "and that plaintiff could have stopped before crossing Natural Bridge Road," had been left out and in place thereof had been substituted the following: "and that in the exercise of the highest degree of care plaintiff should have stopped her car before driving on to Natural Bridge Road." This would require the jury to find the existence of a duty to stop, imposed by the hypothesized circumstances, and if they made the further required finding of plaintiff's failure to stop, in compliance with that duty, then they could properly find that plaintiff was guilty of contributory negligence. Also, while perhaps not absolutely required, the instruction could be made clearer by hypothesizing something concerning the type of highway plaintiff was about to enter and the usual heavy vehicular traffic thereon.

We think the inherent errors noted were prejudicial to plaintiff and it therefore follows that the instruction was reversibly erroneous.

Plaintiff also assigned as error a trial incident relating to the cross-examination of one of defendant's witnesses, but such will not likely recur upon another trial and hence we will not extend this opinion by a discussion of same.

The judgment is reversed and cause remanded for a new trial.

VAN OSDOL and COIL, CC., concur.

PER CURIAM.

The foregoing opinion by HOLMAN, C., is adopted as the opinion of the court.

All concur.