George J. SHAW, Appellant,

v.

Lester GRIFFITH, Respondent.

No. 22405.

Kansas City Court of Appeals.

Missouri.

June 4, 1956.

**232**

Roy P. Swanson, Richard G. Poland, Kansas City, Pettijohn & Eiser, Oregon, Price Shoemaker and Elmer E. Reital, St. Joseph, Blackmar, Swanson, Midgley, Jones & Eager, Kansas City, of counsel, for appellant.

Kranitz & Kranitz, Strop & Strop, St. Joseph, for respondent.

DEW, Presiding Judge.

This action grows out of a collision between the automobile of the plaintiff and that of the defendant on U. S. Highway #275 at the point of the intersection of that highway with a county road four miles east of Mound City, Missouri. The plaintiff sued the defendant for damages for personal injuries claimed to have been sustained in the collision, and defendant counterclaimed for personal injuries alleged to have been sustained by him on the same occasion. The verdict of the jury was in favor of the defendant on plaintiff's petition and in favor of the defendant on his counterclaim, awarding him $5,000 damages. Judgment was entered accordingly. After the court overruled the plaintiff's motions for new trial and for judgment on the counterclaim he appealed.

Neither the amount of the verdict nor the extent of the injuries sustained by the parties is in controversy on this appeal.

The gist of the plaintiff's petition is that on the afternoon of February 17, 1954, plaintiff was driving his Chrysler 1953 Sedan westward on U. S. Highway # 275, and was operating his car in a careful and prudent manner on the right-hand side of the highway, and upon reaching a point one mile west of the junction of said Highway #275 with Highway #113 in Holt, Missouri, the defendant, driving his Chevrolet automobile in an easterly direction at said time, suddenly and without warning turned his automobile left and into the north lane of said highway which was at the time occupied by the plaintiff's car, and caused the Chevrolet car to run into and against the plaintiff's car and thereby forced it off the paved portion of the highway and into a ditch on the south side of the highway; and as a direct result of such carelessness and negligence the defendant caused the injuries to the plaintiff described.

The answer of the defendant denied the controversial points and pleaded contributory negligence, charging excessive rate of speed, violating traffic regulations, failure to swerve and prevent the collision after he saw or could have seen defendant in a position of imminent peril, and ignoring a warning sign on the highway as to the presence of the crossroad.

Defendant further set up a counterclaim of several counts, but at the end of the trial, upon motion of the plaintiff, he elected to submit but one, which was his Count III. In that count he pleaded his counterclaim on the humanitarian theory, namely, that the plaintiff saw, or by the exercise of the highest degree of care could have seen, the defendant in a position of imminent peril of being injured by the plaintiff's vehicle then and there on the highway in time for the plaintiff, by the exercise of the highest degree of care and with the means at hand, and with safety to his car and to himself and persons and property, to have averted and prevented defendant's injuries by swerving the plaintiff's vehicle to one side, which he negligently failed to do, thereby proximately and directly causing defendant's injuries.

According to the evidence of the plaintiff he was a resident of Kansas City, Missouri, 56 years of age and a contractor. He was driving his Chrysler car westerly alone on U. S. Highway #275 on February 17, 1954, between 5:00 and 5:30 p. m. His car was 17 feet, 4 inches long and 6 feet, 2 inches wide. It was in good condition and equipped with power steering. It was a clear day and the pavement was dry. At a point about four miles east of Mound City that highway is intersected by a county road from the north known as the "Griffith Road". He was familiar with the crossroad and had traveled Highway #275 on many occasions. He was also familiar with

the crossroad sign on the highway about 500 feet east of the crossroad. On the highway from a point about 500 feet east of the crossroad there is a downgrade which extends to and beyond the crossroad. The slab of Highway #275 was 20 feet 3 inches wide from curb to curb, or about 10 feet and an inch and a half on each side of the center line. The shoulder on the north side of the slab was about 7 feet wide and in good condition and not obstructed except for the road sign mentioned, and a highway marker on the shoulder a short distance west of the intersection set on an angle iron post one-half to three-fourths of an inch in diameter. At the mouth of the county road as it runs northward from the highway there was no obstruction. The approach of the county road to the slab was gravel.

Plaintiff testified that when he reached the crest of the hill described, traveling westward about 60 or 65 miles an hour, there was no car ahead of him nor following him in his lane; that when he first saw the defendant's car it was then approaching in the south lane of the highway and about 200 feet west of the crossroad. There were other cars at a greater distance coming from the west in the south lane. When the plaintiff reached the east line of the intersecting crossroad on his right, he saw defendant, then from 75 to 100 feet west, cut his car without warning into the north lane of Highway #275 in the path of the plaintiff's car. Thereupon plaintiff "jammed on" his brakes and swerved his car to the left and it skidded sidewise on the gravel. Defendant's car never did stop until the collision. Defendant's car, headed east, ran head on into the right side of the plaintiff's skidding car.

Photographs introduced by the plaintiff show the plaintiff's car damaged mostly on the right side. Both of his right-hand doors were forced back into the car. The defendant's car was completely mashed on its front and front right. The impact took place "just north of the center line" of the highway.

Witness Otis George testified that he was driving a car 400 feet back of the defendant's car, saw the defendant make a turn to the north at the crossroad and pull into the position where the front of his car was in the middle of the westbound or north lane of Highway #275. The defendant was traveling about 15 miles an hour at the time he made the turn. He could not see the actual collision because the defendant's car obstructed his view.

Plaintiff called the defendant to the witness stand, who testified that he was a farmer, 70 years old and lived four miles east and a mile and a quarter north of the intersection. His wife was in his Chevrolet car with him. He said he drove up to the corner of the crossroad as usual and looked east and saw nobody, and glanced back through the mirror and saw no one coming from the west; that when he looked west he was starting to make the turn to the left and when he did so, he then saw the plaintiff's car approaching within 300 or 350 feet and at that time the defendant's left wheel was two-thirds over the center line; that he was traveling 10 or 15 miles an hour when he first saw the plaintiff's car approaching; that plaintiff swerved to the north and "I just stopped. I didn't know what to do". "Q. Did you stop instantly as you saw Shaw? A. It was quick as I could. I didn't want to get a head-on collision there". He said he did not know how far he may have gone across the north side of the highway after he saw the plaintiff swerve and when he (defendant) stopped. He said that plaintiff was approaching at 80 or 90 miles an hour "It looked to me like".

In behalf of the defendant his wife testified that at the time of the impact defendant's left wheel was "over" the center line and his right wheel was on that line and the car facing northeast; that the defendant was traveling about 15 miles an hour and when she first saw the plaintiff's car it was 300 feet away, going about 80 miles an hour; that when the defendant's car was stopped just before the accident, his left front wheel was perhaps 2 feet over on the north side of the center line and his right front wheel on that line. One witness who was riding with Otis George said

the impact took place at the center of the slab.

A highway patrolman testifying in behalf of the defendant, stated that he found the plaintiff's car in a ditch on the south side of the highway about 150 feet west of the intersection, and the defendant's car about 125 or 130 feet west of the center of the county road; that the skidmarks of the defendant's car were approximately one foot north of the center, and continued about 100 feet to the west.

Plaintiff's first point is that "* * * the Court erred in submitting defendant's counterclaim to the jury because the evidence failed to show that plaintiff could have sufficiently changed the course of travel of his automobile, with safety, after defendant came into a position of imminent peril". Since defendant submitted his counterclaim only on the humanitarian theory, based only on plaintiff's failure to change his course, it is essential, under the plaintiff's first point, to determine, as a matter of law, whether or not the evidence failed to show that the plaintiff saw, or with the exercise of the highest degree of care should have seen, the defendant and his car in a position of imminent peril from the plaintiff's approaching car in time, thereafter, with the exercise of the highest degree of care and with the appliances and means at hand, and with reasonable safety to his car, to himself and others, to have changed the course of plaintiff's car and thereby have prevented the collision.

It is argued by the defendant that there was at least half of the north lane of the highway left beyond his car; that there was 7 feet of shoulder beyond in good condition with no obstruction except the small marker sign; that there was no obstruction at the mouth of the county road to the north, and there was no reason why plaintiff's car could not have passed with safety. He argues further that when the defendant's car was in the position of imminent peril described, the plaintiff's car, then 300 feet distant, according to defendant's evidence, was traveling 80 miles an hour and would therefore travel 117 feet a second; that allowing plaintiff a reaction period of three-fourths of a second he would travel 88 feet in that period; that if, in the remaining 1¾ seconds, the plaintiff, while traveling the remaining 212 feet to the defendant's car, had swerved to the north at an angle of 2.7 degrees he could thereby have missed defendant's car by a foot. He points out that if plaintiff were traveling 90 miles an hour, he could have swerved 2.8 degrees to the north and missed defendant's car by a foot.

Defendant states in his brief: "The above demonstrates that from the evidence the jury would reasonably infer that Shaw could have avoided the Griffith automobile after Griffith was in a position of peril, and he could have done so without danger to himself". Defendant claims by thus developing the facts, he has clearly sustained the burden of proof on the humanitarian charge of swerving.

Defendant concedes that the plaintiff owed him no duty under the humanitarian doctrine until it became reasonably apparent that defendant was making a left-hand turn in the highway; that the evidence must show that thereafter plaintiff, with reasonable safety to himself and others and to his automobile, could have avoided the collision by changing the course of his automobile; and that defendant has the burden of proving his charge of humanitarian negligence against plaintiff.

Plaintiff cites numerous cases involving proof of ability to stop an automobile in a particuar time or distance, but we do not think the computations in those cases are applicable to defendant's counterclaim herein because it concerns the ability to swerve a car sufficiently to avoid a collision. Of course a reaction period would be allowed and considered in turning the steering wheel as well as in applying the brakes in a humanitarian case. Vietmeier v. Voss, Mo., 246 S.W.2d 785, 789. In the absence of evidence as to the length of such period we accept defendant's concession of three-fourths of a second in a swerving case as it has been judicially applied in the application

of brakes. Dister v. Ludwig, 362 Mo. 162, 240 S.W.2d 694, loc. cit. 698(4); Vietmeier v. Voss, supra. It was said as early as the case of Brown v. Callicotte, Mo., 73 S.W.2d 190, 193: "It is too generally and well known to require formal proof that present day automobiles respond quickly and accurately to the touch of the driver's hand on the steering wheel". That statement was quoted in Berry v. McDaniel, Mo.App., 269 S.W.2d 666, 671. If such were true at the time of such rulings, it is more noticeably true at the present time. We cannot say, as a matter of law, that the evidence failed to prove it *possible* for the plaintiff, after he saw or could have seen defendant in a position of imminent peril to avoid the collision in the exercise of the highest degree of care, by swerving or changing the course of his automobile.

However, such a showing is not sufficient to authorize a submission of negligence under the humanitarian doctrine. The defendant's pleading, his instruction, his concession herein as well as the law itself, required proof of the further fact that the plaintiff, in the exercise of the highest degree of care in swerving and avoiding the collision under the circumstances and conditions shown, could have done so *with reasonable safety to himself, to other persons and to his automobile*, with the means and appliances at hand. Johnson v. St. Louis Public Service Co., 363 Mo. 380, 251 S.W.2d 70, 75(6). According to defendant's evidence in support of his counterclaim, the plaintiff, driving west on Highway #275 at 80 miles an hour, saw or could have seen the defendant 300 or 350 feet distant, approaching from the west and suddenly turning defendant's automobile over and upon the north lane in which the plaintiff was driving; defendant stopped with his car half way into the west-bound lane; after a reaction period, the plaintiff had one and three-fourths seconds and 212 feet in which to avoid the collision by changing the course of his own car; to pass the defendant's car on the right would have required more than the remaining one-half of the north lane of the highway and would have required the plaintiff to pull off onto the shoulder, which was 7 feet wide and on which, a short distance west of the intersection, there was a highway sign erected on an iron post; cars were approaching from the west on the south or east-bound lane of the highway; there was nothing shown in evidence that would indicate to the plaintiff whether defendant would continue further across the north lane, or would remain standing, occupying one-half of that lane; there was gravel on the highway at the intersection with the county road which caused the plaintiff to skid when he attempted to swerve his car to the left or south of defendant's car, which was then in his path.

We believe that such evidence fails, as a matter of law, to prove that plaintiff, under the conditions and circumstances shown, could have swerved his car and avoided the collision, with safety to his own car, to himself and to other persons. In other words, a mere showing that plaintiff, in one and three-fourths seconds, while driving 80 or 90 miles an hour, could have swerved his car in his lane of the highway so as to have missed the defendant's car suddenly placed in plaintiff's path, falls short of proof that, under the circumstances in evidence, such could be accomplished with reasonable safety to the plaintiff, to other persons and to his car, as required by the pleading, instructions and by the law.

It was held in Paydon v. Globus, Mo., 262 S.W.2d 601, 604(2) that a mere possibility of avoiding a collision is not sufficient to make a submissible case under the humanitarian doctrine. In a similar case it was said in Fisher v. Gunn, Mo., 270 S.W.2d 869, 873: "And while it would seem reasonable to say that in a distance of 176 feet an automobile traveling 60 m. p. h. could, by 'angling', reach the opposite side of an 18-foot pavement and avoid an automobile blocking the 9-foot west lane, we may not take judicial notice that such could be done with safety to the driver, his passengers, and others". This is the established rule. See, also, Smith v. Siedhoff, Mo., 209 S.W.2d 233, 238; Yeaman v. Storms, 358 Mo. 774, 217 S.W.2d 495, 499; Thomas v. Aines Farm Dairy, Mo.App., 257 S.W.2d

228, 235, (a "swerving" case); Berry v. McDaniel, supra. In our opinion it was error to submit the defendant's counterclaim to the jury because of failure of proof, and we so hold.

Plaintiff contends that defendant's Instructions G and E submitted inconsistent theories. Since we have held that because of failure of proof, it was error to submit the defendant's counterclaim, it is not necessary to discuss whether Instruction G, submitting it, was inconsistent with Instruction E, submitting contributory negligence as to plaintiff's claim. Likewise, it would serve no purpose to consider the plaintiff's point that Instruction G did not properly hypothesize or limit the zone of peril in the humanitarian negligence plea.

The plaintiff's remaining point is directed to an alleged error in the trial of his own claim. He assigns as error the giving of defendant's Instruction F as in clear conflict with the plaintiff's main Instruction 3. The pertinent part of plaintiff's verdict-directing Instruction 3 required the jury to find: "That the Defendant approaching from the West drove his automobile into the north lane of Highway #275 and across the path of plaintiff's automobile at a time when the automobile which plaintiff was driving was so close that plaintiff was unable to stop or swerve his automobile * * * and avoid colliding * * *". The defendant's Instruction F, expressly directed to the matter of plaintiff's claim, told the jury that if the plaintiff saw, or by the exercise of the highest degree of care could have seen, that there was danger of collision with the defendant's car, in time, thereafter, by the exercise of such care, with safety, etc., "to have changed the course of travel of the automobile he was operating and thereby have prevented the collision in question, if you so find, and if you further find that the aforesaid negligence of the plaintiff George Shaw, if you find he was negligent, as aforesaid, directly caused or directly contributed to the cause of plaintiff's injuries, if any, then your verdict on the plaintiff's claim must be in favor of defendant Griffith and against the plaintiff Shaw, and this is true and the law, *even though you find the defendant Lester Griffith was negligent* as submitted in Instruction No. 3". (Italics supplied).

■ Thus in plaintiff's Instruction 3 his right of recovery was predicated on his inability to stop or swerve and avoid the collision after the defendant drove into plaintiff's path, and in defendant's Instruction F the jury was told, in effect, that if the plaintiff *was* able to stop or swerve and thereby avoid the collision, under those circumstances, he could not recover *even though the jury also found that the defendant had made it impossible for him to do so.* This was conflicting, confusing, a misstatement of the law and was prejudicial.

■ It is apparent that the judgment, insofar as it authorizes a recovery by the defendant on his counterclaim, should be reversed for failure of proof, as we have pointed out. It is likewise evident that the plaintiff is entitled to a reversal of the judgment insofar as it denies him any recovery on his petition, because of the error in defendant's Instruction F described, and for that reason is entitled to a retrial on his claim. To remand for retrial the claim of the plaintiff on his petition would, in effect, involve a retrial of the issues pleaded in the defendant's answer and counterclaim, since the respective allegations are closely interrelated and interdependent. To be intelligible, the retrial of one claim would require a retrial of the other. They shoud be tried before the same jury and in the same proceedings; otherwise, inconsistencies and confusion would be invited, and perhaps injustice. Bramblett v. Harlow, Mo.App., 75 S.W.2d 626, 633; Wright v. Spieldoch, 354 Mo. 1076, 193 S.W.2d 42, 48; Vogelgesang v. Waelder, Mo.App., 238 S.W.2d 849, 857.

The judgment in its entirety is reversed and the cause is remanded for retrial.

All concur.