**Alice Irene PERRY, Appellant,**

v.

**Glenn A. DEVER, Respondent.**

No. 45499.

Supreme Court of Missouri,
Division No. 2.

May 13, 1957.

Motion for Rehearing or to Transfer to
Court en Banc Denied June 10, 1957.

1

Robert G. Oberlander, Irving Kuraner, Kuraner, Freeman, Kuraner & Oberlander,

Kansas City, Charles A. Powell, Jr., Macon, for plaintiff-appellant.

Hess & Collins, Macon, for defendant-respondent.

BOHLING, Commissioner.

Action by Alice I. Perry against Glenn A. Dever for $15,000 for the alleged wrongful death of Arthur E. Perry, plaintiff's husband, as the result of being struck by defendant's automobile. The court sustained defendant's motion for a directed verdict filed at the close of plaintiff's case. Section 510.280 RSMo 1949, V.A.M.S. Plaintiff appealed and contends she made a submissible case on defendant's duty to have stopped, slowed or swerved his automobile or sounded a timely warning under the humanitarian doctrine.

The accident occurred about 11:25 a. m., April 19, 1954, on Highway 36 in Linn county, Missouri, approximately a mile west of the Marceline Junction. The day was nice. The sun was shining. The pavement was dry.

Kenneth Tumlin and Arthur Perry, linemen for the Macon Electric Co-operative of Macon, Missouri, were extending a service line to a house under construction approximately 450 feet north of Highway 36.

Highway 36 is an east-west two-lane blacktop surfaced road, the pavement being 22 feet in width. A small graded road or lane, which was 38 feet wide 10 feet north of the pavement, extended northwardly to the house, and 21 feet east of this lane a gravel road extended southwardly. A 40-foot power line pole was 40 to 50 feet south of the pavement at the west side of the gravel road, and a service pole was 50 to 60 feet north of the pavement at the east edge of the lane. A culvert was 13 feet east of the edge of the lane and a second culvert was 102 feet farther east.

Defendant was traveling west. There was no eastbound traffic at the time. Westbound traffic comes over the crest of a hill some distance (not established and immaterial here) east of the scene of the accident, then enters a dip where passenger cars pass out of sight for a short distance on Highway 36, then comes over a lower crest and proceeds "slightly" downgrade for a distance and then, from the photographs, over a slight upgrade to the scene of the accident. This nearest crest is .2 of a mile (1056 feet) east of the lane to the house.

Tumlin and Perry, after measuring the length of the wire to be used, hand coiled it, and placed it 2 to 5 feet north of the north edge of the pavement of No. 36. The line had to cross No. 36. The men went to the house and secured Raymond Bodurtha to flag for them. The three returned to the wire in the lane. Tumlin proceeded to and climbed the pole south of No. 36. He was on the north side, facing south. Tumlin warned Perry, stating they always did so when crossing a pavement, to "Watch those cars," or "Be sure and watch them cars," referring to cars generally, when Tumlin started to cross the highway and again as he mounted the pole. Perry and Bodurtha were standing 2 to 5 feet north of the pavement.

Bodurtha testified that Perry was about the center of the lane, working with the wire, which was "more or less coiled up and sort of tangled" and he was 4 or 5 feet east of Perry. Three cars were approaching from the east. Bodurtha told Perry "We will let these cars pass—we will flag the rest of them"; and with that Bodurtha started walking east on the north shoulder. Perry was still working with the wire, preparing to go across the highway. He had one end of the wire in his hand and was moving south toward the pavement. Bodurtha carried the flag, unrolled, in his right hand down by his side. He watched the westbound cars, two of which were running close together, and the third car (defendant's) was approximately one-fourth mile back of the second car. The first two cars passed Bodurtha when he was about even with the first culvert, 13

feet east of the lane, and defendant's car was then "part-way down the road."

Tumlin, on the pole south of the highway, looked over his shoulder to the right as the two cars passed. He saw Perry start walking out onto the pavement as soon as the second car passed. Perry took more than one step, moved to 2 or 3 feet out on the pavement, and seemed to be tugging on the wire. Perry was looking and headed southwest as he walked out on the pavement. Tumlin stated he continued with his work; that they carry eye nuts in a pouch on the back of their belts; that he was screwing an eye nut on a 5⁄8ths bolt, which does not take too long. In the matter of a second or two he heard tires "screech," and immediately looked back over his right shoulder and saw defendant's car strike Perry.

Bodurtha testified that in his best judgment he walked approximately half the distance between the first and second culverts (that is, 51 feet) when defendant's car passed him. He turned and saw defendant's car strike Perry.

Tumlin and Bodurtha each testified he did not hear any horn.

Tumlin stated that Perry was hit by the bumper and right front fender, and his head struck the "channel iron," the little eave where the water runs off the top of the windshield. He thought Perry was 2 to 3 feet out on the pavement when struck, and on cross-examination said it "could have been five—from two to five feet, roughly." Bodurtha's best judgment was that Perry was about 1½ feet out on the pavement when struck. After the accident Perry was about the center of the lane and 18 inches to 2 feet north of the pavement.

Defendant parked his car on the north shoulder of No. 36. It had a dent on the right front of the hood. The wire was lying in the lane north of the pavement, as if it had been in a coil and then pulled out.

Defendant's car left skid marks on the north half of the highway. The first skid marks started 68 feet east of and stopped about the center of the lane. Then there was a break of approximately 4 to 5 feet, and the skid marks continued on for another 25 or 26 feet, an overall length of 98 feet. The skid marks were in a straight line. They angled slightly, probably a foot, toward the center line, being 2 or 3 feet north of the center line at the center of the lane.

■ Plaintiff had the affirmative and the burden on the issue of defendant's actionable negligence under the humaritarian doctrine. However, the evidence and all reasonable inferences therefrom, viewed in the light most favorable to plaintiff, are for consideration on appeal from a judgment entered on a directed verdict at the close of plaintiff's case. See v. Wabash R. Co., 362 Mo. 489, 242 S.W.2d 15, 17 [3]; Danzo v. Humfeld, Mo., 180 S.W.2d 722 [1]; Bohle v. Sternfels, Mo., 261 S.W.2d 936, 941 [3].

Walter Snider, of the State Highway Patrol, testified: "Q. Did you ask Mr. Dever what his speed was at the time of the impact? A. Yes, sir, I did.

"Q. What did he tell you? A. Fifty miles an hour, at the time of the impact, sir. I asked him the speed he was traveling when he—this accident occurred, and he told me fifty miles an hour." And as to how Perry got out on the pavement in front of him, "The statement he [defendant] gave me was: 'As I approached I saw two men alongside of the road and assumed they were waiting for traffic to pass, and within eighty feet he started in front of me, and I set the brakes and he saw me at that time and threw himself back.'"

■ Defendant construes his statement to the patrolman to establish a speed of 50 m. p. h. at the time of impact and says there is no showing of his speed prior to his application of the brakes. The latter portion of the witness' answer could refer to defendant's speed just prior to his effort

to prevent the accident. Neither Tumlin nor Bodurtha estimated defendant's speed. However, other testimony bears on the issue. Bodurtha's statement that defendant was approximately one-fourth of a mile back of the second car was an estimate. The patrolman stated he measured the distance from the scene of the accident to the first crest to the east and it was "just a little over two-tenths of a mile." Bodurtha stated that when he started east from the first culvert defendant's car had "come partway down the road." A finding that defendant's car was about .2 of a mile from the collision when Bodurtha left the first culvert and that he walked approximately 51 feet while defendant was traveling the .2 of a mile could be had without prejudice to defendant. We have taken judicial notice that the ordinary walking speed of the average man is between 4.4 and 2.9 feet per second. De Lay v. Ward, 364 Mo. 431, 262 S.W.2d 628, 635 [9]. Based thereon, Bodurtha walked the 51 feet in approximately 11.6 to 17.6 seconds while defendant's car traveled approximately 1056 feet. Defendant was traveling between 91 and 60 feet per second, or approximately from 62 to 41 miles an hour.

An important fact issue concerns Perry's obliviousness to the situation. Defendant says speculation, guess and conjecture has to be indulged to find that Perry was actually oblivious, the point at which his actual obliviousness became reasonably apparent, and that defendant had notice, actual or constructive, thereof.

■ We agree with defendant's authorities that evidence which is merely guess, speculation or conjecture is insufficient to establish where the position of imminent peril begins, Paydon v. Globus, Mo., 262 S.W.2d 601, 603; that a likelihood or a bare possibility of injury is not sufficient to create imminent peril, Paydon v. Globus, supra; West v. St. Louis-S. F. R. Co., Mo., 295 S.W.2d 48, 51 [2]; and that defendant may assume plaintiff is paying reasonable attention to his surroundings until plaintiff evidences some reasonable appearance of

obliviousness, and defendant is only chargeable with plaintiff's obliviousness if he knew or had constructive notice thereof. Knorp v. Thompson, 352 Mo. 44, 175 S.W. 2d 889, 899, 900; Martin v. Effrein, 359 Mo. 1150, 225 S.W.2d 775, 778 [9]. Our cases do not limit imminent peril to unavoidable danger. State ex rel. Kansas City Public Service Co. v. Bland, 354 Mo. 868, 191 S.W.2d 660, 662 [1].

■ Defendant's statement that when within 80 feet of Perry he set his brakes and Perry saw him at that time and threw himself back permitted of findings that Perry was actually oblivious up to that instant, and that defendant knew Perry was oblivious when he set his brakes. There was additional testimony. Perry was still working with the wire when Bodurtha started walking east. Defendant's car was part way down the road and in Bodurtha's view when Bodurtha left the first culvert. The jury could find that Perry, only a few feet west, was within defendant's view at that time. Perry walked onto the pavement looking and walking southwest, away from, not toward, defendant's car. He was tugging with the wire, which the jury could find was tangled. According to Tumlin, Perry took more than one step to 2 or 3 feet out on the pavement as soon as the second car passed; then Tumlin turned back to his work; two seconds later he heard tires screech; he immediately glanced back, saw Perry 2 or 3 feet out on the pavement and the car strike Perry. All of the skid marks were north of the center line of No. 36, and there was no testimony that defendant's westbound car was anywhere other than in the north lane, its proper lane of travel, of No. 36. From the permissible findings that Perry threw himself back to avoid being struck by defendant's car; that Perry was about 1½ feet (Bodurtha's testimony) south of the north edge of the pavement when struck; and that the wire he was working with was north of the pavement after the casualty, the jury could find that Perry was in the north lane of No. 36 and that defendant's

car approached him in that lane. A finding that Perry was oblivious to any danger when he started walking and up to the time defendant's tires screeched was warranted. Obliviousness widens the imminent peril zone beyond the path of an approaching vehicle and, as a corollary, lengthens the imminent peril zone. Crews v. Kansas City Pub. Serv. Co., 341 Mo. 1090, 111 S.W.2d 54, 57 [2, 3]; Womack v. Missouri P. R. Co., 337 Mo. 1160, 88 S.W.2d 368, 371 [3, 5–7]; Wabash R. Co. v. Dannen Mills, Inc., Mo., 288 S.W.2d 926, 929; Silver v. Westlake, Mo., 248 S.W.2d 628, 632; Williams v. Ricklemann, Mo., 292 S.W.2d 276, 281; Gray v. Columbia Terminals Co., 331 Mo. 73, 52 S.W.2d 809, 812.

■ With Perry oblivious and in the lane of defendant's approaching car, he was within the zone of peril. Rentfrow v. Thompson, 348 Mo. 970, 156 S.W.2d 700, 704 [11, 12]. Defendant's duty was to exercise the highest degree of care, Gude v. Weick Bros. U. Co., 322 Mo. 778, 16 S.W.2d 59, 60 [1, 2], and to act on reasonable appearances and at a time when action would be effective after the humanitarian doctrine seized upon the situation. It was for the jury to say when Perry's obliviousness was or should have been apparent to defendant and when Perry's imminent peril arose, and whether defendant was charged with Perry's obliviousness and should have acted at a greater distance than 80 feet from the point of the casualty. The jury could find defendant should have acted under the humanitarian doctrine before he did act; and an earlier warning, slackening or swerving would have saved Perry. See cases last cited; De Lay v. Ward, 364 Mo. 431, 262 S.W.2d 628, 635; Marczuk v. St. Louis Pub. Serv. Co., 355 Mo. 536, 196 S.W.2d 1000, 1003; Allen v. Kessler, Mo., 64 S.W.2d 630, 633 [2–4]; Teague v. Plaza Express Co., 354 Mo. 582, 190 S.W.2d 254, 256.

Defendant makes the point that, assuming Perry became in a position of imminent peril, there is not a scintilla of evidence that at such time defendant had the means at hand to avoid the accident by warning, swerving, slackening his speed, or stopping.

Defendant says there was no evidence (1) as to the kind of car he was driving; (2) that his car had a horn or other signaling device; (3) that, if so, it was in working condition; (4) that his windshield permitted visibility; (5) that his car had any brakes at all, or, (6) if so, what kind of brakes, and (7) whether they were in working condition, and (8) the time required for an effective application of the brakes; (9) the percentage of the grade over which his car was being operated; (10) the tread and condition of his tires; (11) the distance within which he could have stopped at the speed he was traveling; (12) the number and weight of his passengers, if any; (13) whether his car had a steering mechanism, and, (14) if any, its type and (15) working condition; (16) the time and space required to swerve or slacken the speed of his car; (17) that the south traffic lane was unobstructed; (18) that the north shoulder was unobstructed; (19) that defendant was physically and mentally able to see, understand and take action; (20) that Perry could have heard a warning or would have heeded it. Defendant stresses West v. St. Louis-S. F. R. Co., Mo., 295 S.W.2d 48, 52 [6], 53; Young v. St. Louis Pub. Serv. Co., Mo., 250 S.W.2d 689, 691, 692; Breshears v. Myers, Mo., 266 S.W.2d 638, 640 [1, 2]. Defendant says, having failed to make a case on slackening speed, plaintiff, a fortiori, failed to make a case on failure to stop; citing Stout v. St. Louis County Transit Co., Mo.App., 285 S.W.2d 1, 5, 6. Defendant quotes from the West case, supra, among other things, the statement that this court may not take judicial notice that any particular kind of brakes or type of signaling devices are in good working order and available for immediate use by railroad trainmen; and from Mallow v. Tucker, Mo., 281 S.W.2d 848, 851, that in the circumstances there of record we could

not judicially know the automobile could have been stopped in time to have avoided the collision.

■ Plaintiff admits her proof was not what it should have been, but contends it was sufficient to present a jury issue. A plaintiff is not to be cast because his case rests in part on circumstantial evidence. Van Brock v. First National Bk., 349 Mo. 425, 161 S.W.2d 258, 260 [1–3]. Defendant's argument calls for the facts and permissible inferences favorable to plaintiff. Defendant was operating a 1952 Plymouth. The accident occurred April 19, 1954. The slight grades of the highway here involved were not sufficient to preclude effective action by defendant as a matter of law. Highways are for use by the traveling public and a jury would understand from the testimony there was no eastbound traffic at the time that the south lane of No. 36 was open to defendant for swerving his car and that he was not required to swerve onto the north shoulder of No. 36. Defendant saw Perry and Bodurtha on the north shoulder while he was approaching the scene. He realized Perry was in imminent peril when within 80 feet of Perry. His brakes were then in such condition and applied by him with such force that 12 feet therefrom they caused his tires to make skid marks and produce a screeching sound sufficient to arouse Perry to his existing peril. Defendant after the accident parked his car on the north shoulder of No. 36 at the scene. This is evidence, direct or circumstantial, that the windshield, tires, brakes and steering mechanism of defendant's car were in effective working condition and of defendant's physical and mental ability to see, understand and take action. Silverstein v. St. Louis Pub. Serv. Co., Mo., 295 S.W.2d 37, 41; Lang v. St. Louis-S. F. R. Co., 364 Mo. 1147, 273 S.W.2d 270, 275. In addition, defendant's brief states he was in the courtroom during all of the trial. The jury could observe his appearance.

■ In 1934 we stated: "It is too generally and well known to require formal proof that present day automobiles respond quickly and accurately to the touch of the driver's hand on the steering wheel. The necessary impulse may be applied in an instant." Brown v. Callicotte, Mo., 73 S.W.2d 190, 193 [1]; Shaw v. Griffith, Mo. App., 291 S.W.2d 230, 234 [3].

In Fisher v. Gunn, Mo., 270 S.W.2d 869, 873 [1] we considered it a matter of common knowledge that the distance between the center of the front tires of a Chevrolet automobile was about 4½ feet. Peterson v. Tiona, Mo., 292 S.W.2d 581, 583, states: " * * * it should not be assumed that the headlights on defendant's automobile were below legal requirements." Defendant says the assumption in Allen v. Kessler, Mo., 64 S.W.2d 630, 635 [5], that defendant's truck was properly equipped with horn and efficient brakes is not good law. A determination of the contention is not essential here.

■ While courts may not take judicial notice of the precise distance within which a given automobile may be stopped under given conditions, judicial notice has been taken of the limits within which a stop could be effected; for instance, at a speed of 45 to 50 miles an hour, within 300 to 350 feet. Spoeneman v. Uhri, 332 Mo. 821, 829, 60 S.W.2d 9, 12 [5–8]. See also Zickefoose v. Thompson, 347 Mo. 579, 148 S.W.2d 784, 790; Hutchison v. Thompson, Mo., 175 S.W.2d 903, 909, 910.

■ The testimony established that Perry was 51 years of age and in good health. From defendant's statement the jury could find that Perry heard and heeded the warning given by the screech of the tires when defendant's brakes took effect and tried to escape. It was for the jury to say whether had he received an earlier warning his effort would have been successful. Silverstein v. St. Louis Pub. Serv. Co., Mo., 295 S.W.2d 37, 41 [5].

Defendant's cases are distinguishable in that they involved an act of a plaintiff proceeding to cross defendant's line of travel and in the circumstances called for precise proof covering the comparatively short time and distance available to the defendant to avoid injuring plaintiff. In West v. St. Louis-S. F. R. Co., supra, 295 S.W.2d loc. cit. 55, the defendant had between 2 and 2½ seconds in which to act. Spoeneman v. Uhri, supra, mentions that more is commonly known concerning the operation of automobiles than concerning the handling of trains. In the instant case the jury could find that some place as defendant traversed the 1056 feet to the point of impact plaintiff's obliviousness should have become apparent to defendant and a duty arose to act under the humanitarian doctrine. Like factual situations were not established in Wapelhorst v. Lindner, Mo., 269 S.W.2d 865, 870; Martin v. Effrein, 359 Mo. 1150, 225 S.W.2d 775, 778; Paydon v. Globus, Mo., 262 S.W.2d 601, 603; Knorp v. Thompson, 352 Mo. 44, 175 S.W.2d 889, 899 [17–19], and other cases cited by defendant.

■ The imminent peril zone is not limited under the instant facts as a matter of law to the 68 or 80 feet mentioned in defendant's statement to the patrolman. Wright v. Osborn, 356 Mo. 382, 201 S.W.2d 935, 938 [7]; Dutcher v. Wabash R. Co., 241 Mo. 137, 158(I), 145 S.W. 63, 68 [1]; Mayfield v. Kansas City So. R. Co., 337 Mo. 79, 85 S.W.2d 116, 120, 123, 124; Peterson v. Tiona, Mo., 292 S.W.2d 581, 582 [2]; Pitcher v. Schoch, 345 Mo. 1184, 139 S.W.2d 463, 467 [7–10].

■ Whether defendant in the circumstances of record could have acted under the humanitarian doctrine with safety to himself, his passengers, if any, and his car was also for the jury. As before stated defendant started to act when 80 feet from Perry and so applied his brakes that within 12 feet they produced skid marks on the pavement, and after the accident he parked his car on the north shoulder of the high-

way. The jury could find Perry was the only obstruction on the pavement defendant had to avoid, and, oblivious to the situation, was within defendant's view for many more than 80 feet. The case does not involve a car running 80 to 90 m. p. h. and only 1¾ths seconds of time, as in Shaw v. Griffith, Mo.App., 291 S.W.2d 230, 235 [5], relied on by defendant.

What has been said sufficiently rules the issues presented. Defendant's motion for a directed verdict should have been overruled. No doubt additional facts will be developed upon a new trial.

The judgment is reversed and the cause remanded.

BARRETT and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by BOHLING, C., is adopted as the opinion of the court.

All concur.

On Motion for Rehearing

PER CURIAM.

Defendant's motion for rehearing or to transfer renews contentions presented on original submission and questions certain statements in the opinion. After again carefully reviewing the record and briefs, we conclude counsel has inadvertently overlooked testimony of record and only one contention need be considered.

Defendant states not one scintilla of evidence supports the statements in the opinion that: "Defendant parked his car on the north shoulder of No. 36"; or that: "Defendant was operating a 1952 Plymouth." There was no direct testimony to this effect. There was, however, affirmative testimony that Perry walked, took more than one step, out to 2 or more feet onto the pavement, and seemed to be tugging on the

wire; that the car's right front bumper, fender and headlight struck Perry and his head struck its channel iron; that his body fell off onto the shoulder, and that the car that struck him stopped west of the driveway. Defendant gave the patrolman a statement at the scene. The patrolman testified to measurements of skid marks on the pavement and his examination of a 1952 Plymouth parked on the north shoulder of the highway, facing west, and which had a dent on the front right side of its hood. The permissible inference is that the patrolman was examining the car that struck the man who was injured in the accident he was investigating.

The motion is overruled.